AFRAM, Respondent, v. BALFOUR, MACLAINE, INC., Appellant.

*No. 159.  Argued May 6, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 288.)

---

[4] *State v. Foellmi* (1973), 57 Wis. 2d 572, 582, 583, 205 N. W. 2d 144.

For the appellant there were briefs by *William A. Stearns* and *Quarles, Herriott, Clemons, Teschner & Noelke,* all of Milwaukee, and oral argument by *Mr. Stearns.*

For the respondent there was a brief by *Milton Shinken* and *Shinken & Shinken,* all of Milwaukee, and oral argument by *Milton Shinken.*

HEFFERNAN, J. Because the trial judge erroneously assigned the burden of proof to the defendant, and in

addition failed to make any findings of fact, our review of the order is made more difficult.

The defendant at the outset of the trial on the jurisdictional question objected to the fact that it had the burden, both of persuasion and going forward with the evidence, placed upon it. In effect, it became the task of the defendant to prove a negative—that there was no jurisdiction. It is error to require a defendant objecting to jurisdiction to show the nonapplicability of the Wisconsin long-arm statutes. We have stated as much in *Rauser v. Rauser* (1970), 47 Wis. 2d 295, 300, 177 N. W. 2d 115, when, in reference to the facts of that case, we said sec. 262.05 (5) (a), Stats., did not provide a basis for jurisdiction because the plaintiff did not establish that defendant had made a promise to perform services.

Moreover, sec. 262.18, Stats., specifies that, in the case of default, the plaintiff has the obligation to prove prima facie the facts supporting jurisdiction. The obligation to make such proof prima facie is upon the party asserting jurisdiction whether the matter is contested or not.

If there were any doubt upon whom the burden ought to fall, the record in the instant case is convincing. The hearing consisted of the defendant attempting to prove the nonexistence of a factual underpinning of jurisdiction. The defendant's order of proof was met by a barrage of objections on the ground of irrelevancy. It was apparent by the end of the hearing that the format adopted was cumbersome and unworkable. The trial judge acknowledged near the end of the proceedings that he had probably erred in assessing the burden of proof. We no doubt could set aside the order on the ground of erroneous procedure which prevented a trial of the real issues. This, however, would penalize the defendant, who raised the proper objection repeatedly.

Perhaps it was because of the error in assigning the burden that the trial judge concluded not to make findings of fact. At any rate, there are none.

Ordinarily, our question on review is to look to the findings and sustain them unless they are contrary to the great weight and clear preponderance of the evidence. In the instant case, since there are no findings, the trial judge's conclusion is not to be given the special deference which this court ordinarily gives to a finder of the facts. What we review is a conclusion of law. Accordingly, that conclusion will be sustained only if it is supported by the preponderance of the evidence, *i.e.*, we are obliged to put ourselves in the shoes of the fact finder and test the plaintiff's assertion of jurisdiction. This court, however, is one of appellate jurisdiction only, and we will resolve factual matters only when they are undisputed or susceptible to proof by judicial notice.

By stating the posture of this case, the small likelihood of the plaintiff prevailing is at once apparent. The plaintiff never assumed the burden that should properly have fallen upon him, and few of the facts upon which a jurisdictional decision could be based are wholly uncontested.

There are some salient facts, however, which appear to be uncontested. The New York brokerage house of Balfour was not the contracting party in the disputed telephone conversation of February 5, 1969. Its only function was to relay the order to Watson, the London broker. The written confirmation of the transaction came in this case, as it routinely did, not from Balfour in New York, but from Watson in London, on a form that specified that the only parties to the agreement were Watson and Afram. Proceeds or deficits were to be paid only by these parties. The record shows that Watson sent checks in pounds sterling directly to Afram until Afram requested as a convenience that the conversion to dollars be made for him by Balfour. Although there was some evidence that in some cases the transaction in London was immediately confirmed by a telephone call from Balfour to Afram, there was no proof of that in this instance.

In short, the proof fails to show any relationship of Balfour to the instant transaction, except as a transmittal agent. We do not here decide the merits, but if, as seems to be the underlying claim of Afram, Balfour erroneously or negligently transmitted the order to London, the claim might well fall into the field of tort and not under sec. 262.05 (5), Stats., Local services, goods or contracts.

Under sec. 262.05 (5), Stats., personal jurisdiction is based upon the relationship of the particular transaction to Wisconsin, rather than upon the defendant's relationship to the state.

The notes of Prof. G. W. Foster, Jr., the reporter for the revision of the jurisdictional statutes, appear in the 1970 Wisconsin Annotations commencing on page 1298.

In referring to the portion of the revision covered by sec. 262.05 (5), Stats., the reporter states:

"In the second situation there is some degree of consensual privity between the plaintiff and defendant with respect to the action brought. In these cases it is not necessary that the defendant have done any act within the state; the basis for personal jurisdiction is rather that the defendant has entered some consensual agreement with the plaintiff which contemplates a substantial contact in Wisconsin. The contemplated contact may include performance of services in the state by either party, the production, use or consumption of goods within the state, the payment of money secured by local property, the payment of money upon the happening of some insured event within the state, or the agreement to insure a resident of the state against the happening of an event which might occur anywhere. See subs. (5), (6), (7) and (10)." (P. 1302)

On page 1307, further discussing sec. 262.05 (5), Stats., Professor Foster states:

"Three jurisdictional facts are required by this subsection: (i) a claim arising out of a bargining arrangement made with the defendant by or on behalf of the plaintiff; (ii) a promise or other act of the defendant, made or performed anywhere, which evidences the bar-

gaining arrangement sued upon; and (iii) a showing that the arrangement itself involves or contemplates some substantial connection with the state."

Sec. 262.05 (5) (a), Stats., requires that there be a promise by the defendant to perform services within the state or to pay for services within this state that are to be performed by the plaintiff. There has been no proof that Balfour was to perform any services within this state, nor any allegation that it would pay for any services of the plaintiff to be performed in this state.

Neither is sec. 262.05 (5) (b), Stats., applicable. Certainly, there is no proof that the defendant Balfour actually performed any services for Afram in the state of Wisconsin or that Afram performed any services for Balfour.

Perhaps the plaintiff could assert facts that would support a finding of jurisdiction under sec. 262.05 (5) (a) or (b), Stats., but it has chosen not to assume the burden of doing so. As we see the undisputed facts, any mutual obligations that arose out of the particular transaction were between Afram and Watson and not Afram and Balfour.

Sec. 262.05 (5) (c), (d), and (e), Stats., are concerned with the promise to deliver or to deliver goods, documents of title, or other things of value, either to the state or from it and by either the plaintiff or defendant. Sec. 262.05 (5) (c), (d), and (e) provide:

"A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 262.06 under any of the following circumstances:
". . .
"(5) LOCAL SERVICES, GOODS OR CONTRACTS. In any action which:
". . .
"(c) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this state

or to ship from this state goods, documents of title, or other things of value; or

"(d) Relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on his order or direction; or

"(e) Relates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred."

As the consequence of the transaction which commenced by Afram's telephone call of February 5, 1969, but one item was delivered—a form executed by Watson, stating that it had sold 40,000 Troy ounces of silver for the account of Afram on a seven-month basis.

The evidence shows that this document was sent by Watson directly to Afram and never passed through the hands of Balfour. The contract form specifically limits the contracting parties to Watson and Afram. No one else, including Balfour, is a party to it. It is signed only by a Watson representative.

There has been no proof made by the plaintiff that the contract is negotiable or assignable. In fact, the contrary seems to be the case, for the contract rules appearing on the reverse of the form indicate that trading can be done only through a member of the exchange in London.

It is argued that the mailing of the contract to Afram in Wisconsin confers jurisdiction under sec. 262.05 (5) (c), (d), and (e), Stats., in that the silver contract was a "thing of value." But these statutes require that delivery or promise to deliver be by the defendant. Here no promise, express or implied, has been found by the finder of the fact. The thing that was delivered was by Watson, who is not a party to this litigation. Whether the contract is a "thing of value" is an unresolved question. We cannot hold that, as a matter of law, it is, and the trial court did not find that it was. The document is merely a confirmation of an order to sell, and it was so referred to by Afram. While it may, under certain cir-

cumstances, confer valuable rights, the plaintiff merely asserted that conclusion and did not prove it. We are not persuaded, in the absence of proof, that the thing here is a commodity futures contract referred to as a "security" in sec. 551.02 (13) (a) ; and even if it is, we have not been shown that it *ipso facto* becomes a "thing of value" in terms of the requirements for conferring jurisdiction over a particular transaction in this state. If the transaction had matured, there would have been a warehouse receipt issued for the silver. A warehouse receipt is, of course, a "thing of value" and ordinarily negotiable.

We note also that had the transaction been fully completed in June according to Afram's plans, the balance due him would be on the London Metal Exchange and the $17,950 he now claims would have been sent by Watson, not Balfour.

*Nagel v. Crain Cutter Co.* (1971), 50 Wis. 2d 638, 645, 184 N. W. 2d 876, stated that it was not the intention of the legislature that the mere payment of money be enough to confer jurisdiction. Thus, even were it contemplated that Balfour, as an accommodation to Afram, converted pounds sterling to dollars and sent them on to Afram, it would be a mere payment of money, as an accommodation to Afram, not pursuant to a contractual relationship.

We conclude, therefore, that jurisdictional facts have not been proved which would allow this court to decide, as a matter of law, that this case can properly be heard on the merits by a Wisconsin court.

It is also argued that Balfour had a local presence or status in Wisconsin under sec. 262.05 (1) (d), Stats., which allows suit here against a defendant who "[i]s engaged in substantial and not isolated activities within this state . . . ."

There is no finding in this regard by the trial judge, and the evidence is, to a degree at least, disputed. Whether Balfour solicited business here is in sharp dis-

pute. Whether it had established a "referral" system which was the equivalent of a pattern of solicitation was in dispute, and again not resolved by the judge. It appears undisputed that at the time the action was commenced on July 20, 1970, Balfour had no customers in Wisconsin and was engaging in no business activities here. While sec. 262.05 (1) (d), Stats., seems to make the date of the commencement of the action the benchmark for the determination of "substantial . . . activities," we do not rely only on that date, conclusive as it appears to be if the statute is given its literal meaning. Rather, we find that the facts in respect to such activities are in dispute, and the trial judge did not resolve the question. Again, this omission in the record appears to be the result of the plaintiff's failure to assume and discharge his burden of proof.

While we have adopted a methodology of appraising jurisdictional contacts (*Zerbel v. H. L. Federman & Co.* (1970), 48 Wis. 2d 54, 65, 179 N. W. 2d 872, and *Nagel v. Crain Cutter Co.* (1971), 50 Wis. 2d 638, 648, 184 N. W. 2d 876), such analysis is unnecessary here. The standards set by sec. 262.05, Stats., if met, prima facie meet the constitutional demands of *Pennoyer v. Neff* (1877), 95 U. S. 714, 24 L. Ed. 565, and *International Shoe Co. v. Washington* (1945), 326 U. S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95. If the transaction has the necessary qualitative relationship to the forum as spelled out in the various subsections of sec. 262.05, the constitutional objection is prima facie at least surmounted. What is listed are situations or transactions in which it is not unfair or a denial of due process to extend Wisconsin's long arm of jurisdiction to a nonresident defendant.

An analysis of the evidence shows that plaintiff failed to prove that jurisdiction can properly be asserted under either sec. 262.05 (1) or sec. 262.05 (5), Stats. To assume jurisdiction under that state of the record would

clearly offend traditional notions of fair play and substantial justice.

Plaintiff also asserts that the defendant waived any objection to jurisdiction when it adversely examined the plaintiff prior to the hearing on the jurisdictional question. The examination went beyond the exploration of jurisdictional facts and also probed the merits of the lawsuit.

The situation is ruled by the rationale of *Punke v. Brody* (1962), 17 Wis. 2d 9, 16, 115 N. W. 2d 601, wherein we said:

"Nothing in these subsections requires a holding, and such holding would be inconsistent with their purpose, that after a defendant has joined in his answer his objection to jurisdiction and his defenses on the merits, any subsequent appearance by him to prepare for or to go to trial on the merits constitutes a waiver of his objection to jurisdiction over his person."

The objection to jurisdiction was not waived.

*By the Court.*—Order reversed and cause remanded with directions to dismiss the plaintiff's complaint.