HASLEY and another, Plaintiffs and Respondents, v. BLACK, SIVALLS & BRYSON, INC., and another, Defendants and Respondents: J. B. SMITH MANUFACTURING COMPANY, Defendant and Appellant. [Case No. 109.]

PUBLIC SERVICE CORPORATION and others, Plaintiffs and Respondents, v. BLACK, SIVALLS & BRYSON, INC., and another, Defendants and Respondents: J. B. SMITH MANUFACTURING COMPANY, Defendant and Appellant. [Case No. 110.]

*Nos. 109, 110 (1974). Argued October 1, 1975.—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 446.)

564

566

For the appellant there were briefs by *Axley, Brynelson, Herrick & Gehl,* and oral argument by *Bradley D. Armstrong,* all of Madison.

For the respondents there was a brief by *Dempsey, Magnusen, Williamson & Lampe,* and oral argument by *Nicholas J. Meeuwsen,* all of Oshkosh.

HANLEY, J. The following issues are presented on this appeal:

1. May the respondent assert additional bases for appellant's qualification for personal jurisdiction, which were not raised in the trial court?

2. Has appellant waived its objection to personal jurisdiction by raising such objection in an answer containing a cross complaint against codefendants and third-party defendant for contribution?

3. Is personal jurisdiction conferred by sec. 262.05 (4) (b), Stats.?

4. Would the assertion of personal jurisdiction in this case violate due process?

*New issues.*

In the reply brief on this appeal, respondent urges decisional grounds not asserted in the trial court. Citing *McLaughlin v. Chicago, M., St. P. & P. R. Co.* (1964), 23 Wis. 2d 592, 127 N. W. 2d 813, and *Milwaukee County v. Schmidt, Garden & Erikson* (1967), 35 Wis. 2d 33, 150 N. W. 2d 354, the respondent asserts that a notice of appearance sent to the plaintiffs' attorney by counsel for Smith was an act inconsistent with the special appearance demanded to preserve the jurisdictional issue. Further, the joinder in the answer of a defense of lack of personal jurisdiction with a cross complaint for contribution is also characterized as a general appearance. Neither issue is mentioned in the trial court's memorandum decision on the motion. The issues as phrased by respondent in its reply brief were conceded as unanswered by the trial court. Smith, in its own reply brief, states that these issues were not considered by the trial court and have appeared only in the respondents' brief.

Ordinarily, questions which are not properly presented to the trial court will not be considered for the first time on appeal. *Fond du Lac Skyport, Inc. v. Moraine Air-*

*ways* (1975), 67 Wis. 2d 109, 114, 226 N. W. 2d 428. Exceptions do exist as to this rule. An exception has been claimed as to questions of jurisdiction, *Northern States Power Co. v. Hunter Board of Supervisors* (1973), 57 Wis. 2d 118, 133, 203 N. W. 2d 878, but this exception is more particularly applicable to latent defects in subject matter jurisdiction, *Telford v. City of Ashland* (1898), 100 Wis. 238, 239, 75 N. W. 1006, because defects in personal jurisdiction are waived if not timely presented. Sec. 262.16 (6), Stats. In this case, the new issues are presented merely to bolster the trial court's finding of jurisdiction. Therefore, no compelling policy exists to ignore the general rule. Also, this court has declined to consider new issues when they involve factual elements not fully disclosed in the record. *Hastings Realty Corp. v. Texas Co.* (1965), 28 Wis. 2d 305, 318, 137 N. W. 2d 79.

The nature of the first new issue is such as to involve unique factual considerations. In *McLaughlin,* the personal jurisdiction objection based on faulty service of process was raised only after a notice of retainer and appearance and a request for additional time to answer was made. A distinction was made between the simple notice of retainer and such notice of appearance that requires all service of papers to be made on the appearing counsel, sec. 269.37, Stats., with the latter qualifying as a general appearance inconsistent with the special appearance necessary when personal jurisdiction is questioned. Sec. 262.16; *Id.* at 596. In *Schmidt, Garden & Erikson,* the objection to faulty service came after an out-of-state defendant received only a copy of the summons and in response mailed a demand for the complaint which was subsequently served. This court declined to follow the general appearance possibility of *McLaughlin,* but found that jurisdiction was conferred by the defendant's acquiescence in the service as an active partici-

pant in the suit. Both cases imply, however, that accompanying acts expressly indicating an intent to reserve the jurisdictional question would have precluded the finding of waiver. Thus the factual context is important whenever a question arises as to whether a general appearance waiving jurisdiction has occurred. In this case, Smith has replied to the first new issue by an affidavit asserting an oral reservation of the jurisdictional issue in a conversation with plaintiffs' counsel prior to the notice of appearance. Since the record indicates no consideration of the factual context surrounding the asserted waiver, and since the appellant has produced support as to the existence of factual questions, it would be inappropriate for this court to decide the legal question involved.

Respondents' second new issue concerns the effect of a cross complaint by appellant in the same document containing its answer alleging the lack of jurisdiction. The question raised being purely one of law, the issue may be considered in the exercise of this court's discretion. *General Electric Co. v. Wisconsin Employment Relations Board* (1958), 3 Wis. 2d 227, 246, 247, 88 N. W. 2d 691.

*Waiver by cross complaint for contribution.*

Sec. 262.16, Stats., defines the method for preserving the objection to lack of personal jurisdiction:

"**Raising objection to personal jurisdiction, general appearance.** (1) GENERAL APPEARANCE. An appearance of a defendant who does not object to the jurisdiction of the court over his person is a general appearance and gives the court personal jurisdiction over him.

"(2) HOW AND WHEN OBJECTION SHALL BE MADE. *An objection to the court's jurisdiction over the person is not waived because it is joined with other defenses or motions* which, without such objection to jurisdiction, would constitute a general appearance. Such objection shall be raised as follows:

"(a) By motion when a defect is claimed in the service of the summons without a complaint; or when the defect appears upon the face of the record other than the complaint; or in case of a judgment on cognovit or by default;

"(b) By demurrer when the defect appears upon the face of the complaint; and

"(c) By answer in all other cases.

". . .

"(6) WAIVER OF OBJECTION TO LACK OF PERSONAL JUR-ISDICTION. Except as provided in sub. (5), an objection to the jurisdiction of the court over the person is waived if not made as provided in this section." (Emphasis added.)

Respondents contend that the cross complaint for contribution made in Smith's answer was not such a "defense or motion" allowed by sec. 262.16 (2), Stats., to be joined with a personal jurisdiction objection; rather, the claim transformed the pleading into a "general appearance" under sec. 262.16 (1). To support this conclusion, respondent cites language quoted in *Lees v. ILHR Department* (1971), 49 Wis. 2d 491, 182 N. W. 2d 245. Discussing the situation of one who has objected to the court's jurisdiction over his person, the *Lees* statement concluded with (p. 499):

" '. . . and if by any application on his behalf relief is sought on other matters or of a nature which would require the recognition of the jurisdiction of the court [then] the objection on the ground of want of jurisdiction is waived and lost and cannot thereafter be reasserted; . . .' "

While respondents' contentions at first glance appear to have merit, they are frivolous. The language cited in *Lees* accurately stated the law prior to this court's creation of the current sec. 262.16, Stats. *See:* 271 Wis. p. vii, creating sec. 262.17 (2) to (7), Stats. 1957. It was quoted by the court to inferentially support the conclu-

sion in *Lees* that no timely objection to personal jurisdiction had been made, a conclusion mainly grounded on sec. 262.16. In *Lees*, the ILHR department's first answer challenged the reviewing court's subject matter jurisdiction. A few weeks later a motion challenging personal jurisdiction was made. The court properly found that claim waived by the prior appearance without objection.

Such facts are a striking contrast to the case at bar. Appellant Smith's answer contained both the jurisdictional objection and the cross complaint. The cross complaint for contribution is a conditional remedy that exists only after the initial liability is established, and the claim for contribution was placed after the objection within the document. This placement is not determinative under the statute, which merely allows that the defenses or motions may be joined with the objection. The *Lees Case* is consistent and respondents' contentions are inconsistent with the observation by this court in *Punke v. Brody* (1962), 17 Wis. 2d 9, 16, 115 N. W. 2d 601, on sec. 262.16, Stats.:

"[It was] adopted for the purpose of making a substantial change in the law with respect to challenges to jurisdiction over the person and to avoid certain consequences of the former law which were deemed undesirable. One such consequence was that a defendant could not preserve his objection to jurisdiction over his person while contesting the plaintiff's claim on other grounds. Nothing in these subsections requires a holding, and such holding would be inconsistent with their purpose, that after a defendant has joined in his answer his objection to jurisdiction and his defenses on the merits, any subsequent appearance by him to prepare for or to go to trial on the merits constitutes a waiver of his objection to jurisdiction over his person."

To hold that appellant could not join his cross complaint to the document containing the objection would foster repetitious pleadings and delays. It would also be

inconsistent with the established issue—formulating procedure compelling that counterclaims be included in the answer.

"263.05 **Pleadings by defendant.** The only pleading on the part of the defendant is either a demurrer or an answer. . . ."

"263.14 **Counterclaim.** (1) A defendant may counterclaim any claim which he has against a plaintiff, upon which a judgment may be had in the action.

"(2) The counterclaim must be pleaded as such and the answer must demand the judgment to which the defendant supposes himself entitled upon his counterclaim."

"263.16 **Several defenses allowed.** The defendant may set forth, by answer, all defenses and counterclaims he has, whether legal or equitable, or both; they must be separately stated."

Allowing counterclaims to be included in the special appearance method of sec. 262.16, Stats., would be consistent with the liberal interpretation given to procedural statutes to afford speedy and final determinations on the merits. Sec. 262.01; *Huck v. Chicago, St. P., M. & O. R. Co.* (1958), 4 Wis. 2d 132, 90 N. W. 2d 154.

*Long-arm statute.*

It is agreed between the parties that statutory personal jurisdiction over Smith by the Wisconsin trial court would adhere only under the "long-arm" statute, sec. 262.05 (4) (b), Stats. Such personal jurisdiction exists under the following circumstances:

"(4) LOCAL INJURY: FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided *in addition* that at the time of the injury either:

". . .

"(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade." (Emphasis added.)

Although many sources are cited by the parties to this appeal on the question of the relationship between the coverage of the statute and the limits of due process under the fourteenth amendment, *see: Flambeau Plastics Corp. v. King Bee Mfg. Co.* (1964), 24 Wis. 2d 459, 464, 129 N. W. 2d 237; Revision Notes, sec. 262.05, 30 Wis. Stats. Anno. (1975 pocket part, pp. 42–49), the scope of a statute and the possible infringement on the flexible reaches of due process that may occur in its application to a set of facts are ordinarily separate questions. Federal courts in Wisconsin have consistently maintained that even if coverage under a long-arm statute exists, the "due process requirements must still be satisfied." *Thill Securities Corp. v. New York Stock Exchange* (D. C. Wis. 1968), 283 Fed. Supp. 239, 243; *McPhee v. Simonds Saw and Steel Co.* (D. C. Wis. 1969), 294 Fed. Supp. 779, 782. This court has implied the necessity of a two-step approach in *Zerbel v. H. L. Federman & Co.* (1970), 48 Wis. 2d 54, 60, 179 N. W. 2d 872, where it stated:

"Each case arising under the statute 'poses a problem of statutory construction within the constitutional framework and its application to the factual background of each individual case.' "

In *Zerbel,* this court accepted the trial court's finding that sec. 262.05 (5) (a), Stats., was satisfied under the facts of the defendant's activities; the decision mainly concerned the subsequently necessary due process analysis required by the assertion of long-arm jurisdiction. This approach followed the order established in *Dillon v. Dillon* (1970), 46 Wis. 2d 659, 176 N. W. 2d 362, where the factual application of the marital action long-arm jurisdiction statute, sec. 262.05 (11) was undisputed, but the limits of due process were urged as exceeded.

Later cases modified this two-step approach in certain circumstances. *Nagel v. Crain Cutter Co.* (1971), 50 Wis. 2d 638, 184 N. W. 2d 876, concerned the application

of secs. 262.05 (5) and 262.05 (1) (d), Stats. When the precise application of the former section was proposed by a strained construction, this court determined the jurisdictional question by noting the more obvious strain on due process: besides deciding the issue, such method implies that the strained construction was not one intended by the drafters.

The *Nagel* court immediately moved to the due process analysis in considering the latter section:

"(1) LOCAL PRESENCE OR STATUS. In any action whether arising within or without this state, against a defendant who when the action is commenced:

" . . .

"(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise."

The language used indicates an attempt to define that "presence" of the defendant in a state required as one of the possible bases for personal jurisdiction consistent with due process as mandated in *International Shoe Co. v. Washington* (1945), 326 U. S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057. This is in contrast to the other possible grounds allowed by *International Shoe,* such as fewer acts of such a nature and quality that justify jurisdiction for claims arising from the contracts. *Id.* at 318, 319.

The *Nagel* court recognized that concise decision making compelled analysis of the general due process standards alone: facts that satisfy due process would undoubtedly be covered by the flexible language of this "doing business" statute, while the reverse would not necessarily be true. Federal courts have adopted the same approach both before and after *Nagel. Sun-X Glass Tinting of Mid-Wisconsin v. Sun-X International* (D. C. Wis. 1964), 227 Fed. Supp. 365; *Falk Corp. v. United States Aviation Underwriters* (D. C. Wis. 1969), 304

Fed. Supp. 1401; *McCalla v. A. J. Industries, Inc.* (D. C. Wis. 1973), 352 Fed. Supp. 544.

Finally, the decision in *Afram v. Balfour, Maclaine, Inc.* (1974), 63 Wis. 2d 702, 218 N. W. 2d 288, interpreted the effect of satisfying the first step. Compliance with the statute was seen as prima facie compliance with due process. By "prima facie compliance," *Afram* did not imply that a plaintiff's burden of proof is conclusively satisfied in all cases once compliance with the statute is demonstrated. The showing of coverage under one of the subsections of sec. 262.05, Stats., presumes that due process is met, subject to the objecting defendant's opportunity to rebut, especially through use of a five item due process jurisdictional contact analysis adopted in *Zerbel.* The burden is not on the defendant to prove lack of contact with this state as was erroneously required by the trial court in *Afram,* even though the motion to dismiss is produced by the defense; the defendant may dispute the contacts alleged or attack the demonstrated statutory compliance on due process grounds.

Considering the foregoing case law, it is obvious that the two-stage analysis is required here. The provision under consideration, sec. 262.05 (4) (b), Stats., does not necessarily correspond with the flexible limits of due process. Revision comments on that subsection indicate that due process conceivably could have been satisfied in all circumstances by a less restrictive statute:

"Perhaps the occurrence of the injury in the state is alone a sufficient 'minimum contact' to sustain jurisdiction. Twice since International Shoe the Supreme Court has permitted states to base personal jurisdiction on the consequences in the state of acts done elsewhere by the defendant." 30 Wis. Stats. Anno. (1975 pocket part, p. 46).

On the other hand, while noting that "little more by way of additional contact is required," the comments continue that:

". . . This concept that personal jurisdiction may be grounded on the contacts made up of the local injury plus something more (often very little more) has grown recently and rapidly out of the older 'doing business' concept.

". . .

"In recent cases involving injury sustained in the state as a result of an act done elsewhere, reliance has been placed on various types of added contacts to sustain jurisdiction. These . . . included solicitation of business, servicing equipment within the state, and, in some cases . . . that the defendant enjoyed pecuniary benefit from the efforts of others in the state who sold goods manufactured by the defendant." *Id.* at 46, 47.

A review of products liability cases, most of which were grounded on an expansive "doing business" theory of jurisdiction, followed the comment. The revisor summarized the cases with two rules:

". . . First, where the action is upon a local injury caused by an act done elsewhere, and there is no element of consensual privity between the parties respecting the action, a basis exists for personal jurisdiction over the defendant only when he is shown to have some other contact with the state in addition to the facts involved in the particular action sued upon; this concept underlies proposed sub. (4)."

and

"Second, where some degree of privity exists between the parties, personal jurisdiction [exists] . . . upon an isolated bargaining arrangement with the defendant without requiring a showing of any other contacts between the defendant and the forum state. Sub. (5) . . . is based on this second conclusion." *Id.* at 49.

Respondent Black puts great stress on the word "contacts" as used throughout the revision notes. This word is not, however, used in the statute. In light of the equivocalness of the statutory language used and then in light of the conclusions the drafters drew from the contempo-

rary products liability cases, it is evident that the word "contact" was used to embody a pattern of activity (solicitation, service, direct or indirect sales of goods) rather than isolated incidents. Ambiguity allows the intent of the drafters to thus be considered. *Forseth v. Sweet* (1968), 38 Wis. 2d 676, 681, 158 N. W. 2d 370.

Federal courts in Wisconsin have had occasion to review sec. 262.05 (4), Stats. Par. (b) was cited among others as supportive of jurisdiction in *Becher Corp. v. Anderson-Tully Co.* (D. C. Wis. 1966), 252 Fed. Supp. 631 (sale of beds), while par. (a) was utilized in *Thill Securities Corp., supra* (sale of publications, advertising, solicitation of membership), and *Broenen v. Beaunit Corp.* (D. C. Wis. 1969), 305 Fed. Supp. 688 (sale of securities). Those cases concerned many individual transactions which clearly met the sections' requirements.

The issue of the minimum amount of activity required was also raised in the federal courts. In *McPhee v. Simonds Saw and Steel Co., supra,* a Wisconsin plaintiff brought an action for personal injuries against the manufacturer of a saw unit and against the manufacturer of a component part used in the unit. The total unit was sold to a Wisconsin sawmill where the injury occurred. The single alleged contact the component manufacturer had with this state was through the component in the unit involved in the occurrence. Declining to exercise personal jurisdiction, the Federal District Court for the Western District of Wisconsin stated it would:

". . . construe Sec. 262.05 (4) to require that at the time of the injury more than one item processed, serviced or manufactured by defendant, was used or consumed within the state in the ordinary course of trade. The use of the plural ("products, materials or things") in subsection (b) indicates that more than one item processed . . . by a defendant and used . . . in the state is necessary for the exercise of in personam jurisdiction." *Id.* at 782. *Accord, Davis v. Mercier-Freres* (D. C. Wis. 1973), 368 Fed. Supp. 498–501.

The statutes of Wisconsin do provide that the "plural includes the singular," although such construction is not to be observed if it would produce a result "inconsistent with the manifest intent of the legislature." Sec. 990.001 (1), Stats. Adoption of the statute section by ch. 226, Laws of 1959, presumably was the adoption of the intent of the revision committee. Those drafters contemplated jurisdiction in the case of an injury and the concurrent presence of products, materials or things. The single product incident was viewed to create personal jurisdiction only where the additional factor of privity as described in sec. 262.05 (5) was involved. A multiple produce requirement at its minimum could be satisfied by two items.

The jurisdictional requisite of at least two items does not clash with the revision comments indicating a pattern of activity as a "contact." Initially, such items must be present at the time of the occurrence in the ordinary course of trade. A showing of how the two products arrived in this state and a showing that this route was within ordinary commercial activities is at least implied in the statute when the number of products traced to this state does not indicate an established pattern of trade involving the defendant. A satisfactory demonstration of compliance with those conditions would indicate other goods of the defendant were also within the forum at the time of the accident, even if the lack of commercial records or the multiplicity of distributive outlets prevents effective tracing of the ultimate use of a product line.

In this case, many components were sold by the appellant Smith to respondent Black, with the knowledge that such items would be included in products assembled and marketed by Black. This sale, although a relatively small part of its business and an exception to its pattern of sales to distributors, was part of Smith's ordinary commercial practice. The purchase of two items each contain-

ing a Smith part was not an exchange outside of the ordinary course of trade.

The fact that the transaction by which the items entered this forum was one sale is no basis for escape from the long-arm reach. The manner of their arrival is a qualification on the exercise of jurisdiction only in that ordinary commercial practice be involved. A single sale may involve such a number of items that long-arm jurisdiction under the section arises without question.

Finally, as has been previously indicated, the possible hardships that may arise by requiring a manufacturer of products to respond to suit here on the basis of only two items shown to have been present may be cured by an analysis of due process.

*Due process.*

Although the appellant is within the reach of this state's long-arm jurisdiction, and in fact was given adequate notice, via service of process, as required in *Mullane v. Central Hanover Trust Co.* (1950), 339 U. S. 306, 315, 70 Sup. Ct. 652, 94 L. Ed. 865, there remains the consideration afforded him under the fourteenth amendment. The "due process" clause of the amendment demands:

". . . such contacts of the [defendant] with the state of the forum as make it reasonable, in the context of our federal system of government, to require the [defendant] to defend the particular suit which is brought there." *International Shoe Co., supra,* at page 317.

The growth of long-arm jurisdiction and the role of due process as a protection from its abuse was detailed in the *Dillon* and *Zerbel Cases.* As noted, the *International Shoe* decision propounded new bases for the exercise of personal jurisdiction that were in keeping with the evolving patterns of contemporary society. The older concepts, tracing from *Pennoyer v. Neff* (1877), 95 U. S. 714, 24

L. Ed. 565, of a defendant's "presence" in the forum, whether by actual presence or by his consent or, in the cases of corporate entities, by their pattern of "doing business," were often too restrictive in that:

". . . due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co., supra,* at page 316.

Thus, a defendant entity might be subject to personal jurisdiction by its actual presence in a state via incorporation there, or by its consent evidenced by appointment of an agent for service of process, or by the presence evidenced in continual and substantial operations. No burden on due process would arise by the forum's exercise of personal jurisdiction in such circumstances, *id.* at 317, 318, although other individual acts, because of the nature, quality and circumstances of their commission, may certainly justify personal jurisdiction for suits arising from such contacts.

*Zerbel* summarized two decisions that further refined *International Shoe.* In *McGee v. International Life Ins. Co.* (1957), 355 U. S. 220, 223, 78 Sup. Ct. 199, 2 L. Ed. 2d 223, the United States Supreme Court was concerned with the jurisdiction over a Texas insurance company whose only contact with the forum state was the mailing of re-insurance certificates into the state and the return receipt of premium payments by mail from one insured. Holding that the forum could exercise jurisdiction consonant with due process, the court justified its decision in that:

". . . It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."

Although dispute exists as to the weight to be given to the subsequent case of *Hanson v. Denckla* (1958), 357 U. S. 235, 78 Sup. Ct. 1228, 2 L. Ed. 2d 1283, *see Zerbel, supra,* at 61, 62, that case did acknowledge the correctness of *McGee. Hanson, supra,* at 250–252. In *Hanson,* the United States Supreme Court held that Florida could not exercise in personam jurisdiction over a Delaware trustee of a trust executed in Pennsylvania by a Pennsylvania resident who later lived in Florida until death. The trustees remitted trust income to the settlor in Florida, and she exercised certain powers of appointment there. The trust assets remained in Delaware, and no other contact with Florida was shown. After the death of the settlor, residuary legatees of her will commenced suit in Florida, seeking trust assets over which a power of appointment had allegedly been ineffectively exercised prior to the settlor's death. The Florida Supreme Court ultimately upheld jurisdiction over the trustee.

In reversing the Florida court, the United States Supreme Court noted that the primary substantive question decided by the state tribunal was the validity of the trust agreement, rather than the exercise of the power of appointment. *Id.* at 242, 243, 251–253. The agreement was created in Pennsylvania and only incidental activities (the mailing of income to the settlor and the receipt of instructions on the exercise of the powers of appointment) occurred in Florida. This is in sharp contrast with *McGee* where the contract renewal took place yearly in the forum state in addition to the incidental acts. *Hanson* is best viewed as an application of the due process standard to a particular factual situation. *Wisconsin Metal & Chemical Corp. v. DeZurik Corp.* (D. C. Wis. 1963), 222 Fed. Supp. 119, 123; *Miller v. Vitalife Corp. of America* (Iowa 1969), 173 N. W. 2d 91, 94.

This view would also qualify the statement in *Hanson* that (p. 253):

". . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Attempts have been made to satisfy this standard by tests reminiscent of "foreseeability." *See: Keckler v. Brookwood Country Club* (D. C. Ill., 1965), 248 Fed. Supp. 645. In *Keckler,* the court applied the *Hanson* language to a single golf cart present in Illinois through the actions of a distributor, the manufacturer being an Indiana company which had no sales or deliveries in Illinois (p. 649) :

". . . [T]he jurisdictional act is not the creation of a defect, but the distribution of defective products in a national way. When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in *any* state for the damage the product causes."

The *Keckler* court relied heavily on *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N. E. 2d 761, perhaps the leading case on the outer reaches of long-arm due process. *Gray* has been accepted by the seventh circuit, *Consolidated Laboratories, Inc. v. Shandon Scientific Co.* (7th Cir. 1967), 384 Fed. 2d 797. *Keckler* expressed dissatisfaction with the "presumption" in *Gray* that a manufacturer engages in multistate distribution however, and required a showing of the manufacturer's activities from which national channels of distribution could be inferred.

In *Zerbel,* this court adopted a more specific framework to determine if the full due process analysis need be utilized. Before applying the five considerations to determine that the minimum contract be substantial, *Zerbel* required (p. 62) :

"'(1) The nonresident defendant must do some act or consummate some transaction within the forum. . . .

"'(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. . . .'"

These are summations of the demands of *International Shoe*. The first section restates what has been referred to as the "minimum contact." Just as in the case of *Hanson,* the above language should not be read so literally as to include the presence of an agent of the defendant within the forum. *McGee* at least refutes that. Neither should it be seen to revive the purposefulness seemingly required by *Hanson*. The demand that some action be shown other than purely unilateral activity from the forum does not clearly equate with a demonstration of some intent on the part of a commercial enterprise. It is evident that the first requirement has been met, and there is no dispute that the second is satisfied.

Does the minimum contact allow the exercise of jurisdiction, consonant with "fair play" and "substantial justice?"

1. *Quantity of contacts.* Only two items produced by Smith were in this state at the time of the accident and in the course of trade. Although the long-arm statute and the minimum contact criteria may be satisfied, the reasonableness of enforcing jurisdiction on such a small amount is questionable. A small number of products in this state may, of course, be sufficient for the exercise of jurisdiction if there are other contacts, or if each item is of significant import. Such considerations may be raised under the following factor.

2. *Nature and quality of contacts.* The items produced by appellant Smith were sold in Texas and incorporated there into respondent Black's dust scrubbers. A transaction between the plaintiff corporation and Black brought these products into Wisconsin for use. All of the items

involved arrived in one transaction, in which Smith had no privity.

The statute here was based on those circumstances, especially existing in products liability, where privity between consumer and manufacturer are lacking. There may come a point, however, when the intervention of so many parties may make the imposition of authority over the defendant unfair. On the other hand, the travel through distributors by the producer may be an unimportant factor if there is a strong relationship between the entities, *Campbell Construction Co. v. Palombit* (1956), 347 Mich. 340, 79 N. W. 2d 915, or if, as Smith has done, the producer relies solely on a single network of independent distributors to reach the actual consumer. *See: Keckler, supra.* The contact with the consumer here arose as part of its component parts business. Parts were sold to only a few original equipment manufacturers, and this was a small part of its business. Out of a sales volume of $500,000 at the time of the sale to the plaintiff, Smith had sales to the respondent of about $2,000.

The president of Smith expressed surprise that company parts involved were in Wisconsin. It is inferential that this surprise was attributable to the limited business of Smith, the assumed limited demand for its products in Wisconsin, and the proximity to this state of larger competitor manufacturers with their own marketing outlets.

Insofar as availing itself to the protection of our laws by the presence of its goods, consisting of two "bull plugs" in Wisconsin, Smith derived on one occasion the extremely minimal benefit that protected Black and all others who shipped products to local consumers. A vicarious benefit at best, Smith had no further rights in the component so as to entitle it to any affirmative protection granted by our courts or government.

3. *Source of cause of action.* This is not a case of an injury and many varied contacts of unequal import. The cause of action here arose out of the only contacts with this state.

4. *Interest of Wisconsin in the action.* The interest of Wisconsin in affording its injured citizens a forum against foreign defendants who have caused the harm has been given weight. *Zerbel, supra,* at page 66. This may be especially so in light of the policy espoused in *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 450, 451, 155 N. W. 2d 55, where this court adopted a form of strict products liability which is alleged to have occurred here. The nature of the theory of the action is not of jurisdictional import so much as its confluence with an established state interest: The desire in Wisconsin for the protection of the consumer from defective products may be as strong as the desire in California for protection of its citizens from insurance industry abuse. *McGee, supra.*

Such a factor may ordinarily be of significant weight. In this case, however, the plaintiffs have chosen an indifferent posture and have not responded to Smith's assertion that jurisdiction is lacking. Whether they felt that their interests were perhaps best protected by their opponent Black, or whether they no longer deem Smith's presence in the suit a necessity cannot be determined. The arguments in favor of the Wisconsin consumer lose force in the case when they are championed by Black, a Texas corporation, against its cross-complaining codefendant.

5. *Convenience.* Again, the lack of an appearance by the plaintiffs deprived this court of information on this factor. For example, an adequate place of trial may perhaps be in Texas, the home of both active parties on this appeal, if the plaintiffs' cases require few witnesses and no view of the scene. The widespread acceptance of strict products liability makes this state less of a con-

venient forum than when the doctrine was initially proposed.

A lesser weight should be accorded this factor, although it should be considered. The appellant has asserted that this factor is inappropriate as it is a mistaken application of *forum non conveniens*. The use of this factor is by analogy and is not inappropriate since not all jurisdictions have the exercise of power contemplated by *forum non conveniens*. Revision Notes, 30 Wis. Stats. Anno. (1975 pocket part, pp. 86–89). Whatever the power of federal courts to effectuate a shift in venue, and whatever similar power exists on the state level, our system is not so developed to allow a Wisconsin court to remove this action to Texas.

Because there is the power to assist in such relocation, sec. 262.19, Stats., this factor is to be given some consideration by the court exercising jurisdiction and its full weight when raised under the above statute. The initial assertion of personal jurisdiction is not inconsistent with a later recognition that another forum may more ably conduct the action.

We conclude that extending jurisdiction over the corporate defendant, Smith, under the facts of this case under sec. 262.05 (4) (b), Stats., does not satisfy due process.

*By the Court.*—Order reversed.