CLEMENT, Plaintiff-Respondent, v. UNITED CEREBRAL PALSY OF SOUTHEASTERN WISCONSIN, INC., Defendant-Respondent: UNITED CEREBRAL PALSY ASSOCIATION, INC., Defendant-Appellant.

Supreme Court

*No. 76–069. Submitted on briefs January 9, 1979.—*
*Decided January 30, 1979.*
(Also reported in 274 N.W.2d 688.)

For the appellant the cause was submitted on the briefs of *Franks, Pikofsky & Peck, S. C.,* of Milwaukee.

For the respondent the cause was submitted on the brief of *Kevin M. O'Donnell* and *Kersten & McKinnon* of Milwaukee.

COFFEY, J.   This is an appeal from an order entered in the circuit court for Milwaukee county on June 24, 1976, denying the special appearance of the defendant-appellant United Cerebral Palsy Association, Inc., and ruling that the court had personal jurisdiction over the foreign corporation pursuant to the "long-arm" statute, sec. 262.05, Stats.

United Cerebral Palsy Association, Inc. (hereinafter UCPA), is a foreign, non-profit, non-stock corporation,

organized and existing under the laws of the state of New York. United Cerebral Palsy of Southeastern Wisconsin, Inc. (hereinafter UCPSEW), is a domestic corporation and an affiliate of United Cerebral Palsy of Wisconsin, Inc. United Cerebral Palsy of Wisconsin is also the agent for the national organization and defendant in this action, UCPA. Pursuant to an Affiliation Charter, dated February 12, 1970, UCPSEW agreed to abide and be governed by the by-laws, resolutions, procedures, standards, policies and criteria of UCPA. The Charter additionally provided for the division of gross receipts raised by the local organization, UCPSEW. Pursuant to the Charter, the UCPA received 25% of the gross funds raised by UCPSEW and an additional 5% of the gross was given to the state organization, the local retaining 70% of the money raised.

In 1973 the local affiliate, UCPSEW, experienced financial problems and was unable to meet operating expenses. A regional staff person with the national organization informed them of the possibility of obtaining an operating loan from the national organization to help meet their financial obligations. On November 19, 1973, after preliminary negotiations, UCPA agreed to loan UCPSEW the sum of $13,000. As a condition of the loan agreement UCPA required that representatives be placed on UCPSEW's Board of Directors and that these representatives constitute the controlling number of votes on the Board.

In fulfillment of the above condition, UCPA approved and provided the local affiliate with the names of six people to sit on the Board: George J. Schweizer, Jr., Esq., National Vice Chairman of UCPA Board; Mrs. Martin Eaton, National Vice President; Mrs. Richard C. Klein, National Presidential Representative for the Midwest District; Mrs. Harold L. Frier, Member of National Finance Committee; Kenneth R. Auerbach, Member of

National Finance Committee and Mrs. Dorothy Leber, Midwest District Vice President.

Voting control of the Board was accomplished by giving the votes of the six UCPA representatives greater weight than the present UCPSEW board members: thus, each of the six representatives of the national organization on the local board were given one vote and the votes of the existing UCPSEW Board members were diluted to one-third of their previous weight. In effect, the vote of a national representative on the local board counted three times more than that of a Wisconsin board member. Monthly board meetings of UCPSEW were held in Milwaukee, Wisconsin with the UCPA representatives in attendance. The expenses of the national representatives were paid by the national organization, UCPA.

On May 20, 1974, the plaintiff-respondent Neal Clement entered into an employment agreement with UCPSEW as Director of the Developmental Disabilities Advocacy Program, the contract commencing as of May 1, 1974 and terminating on the first day of October, 1976. The UCPSEW Board approved and ratified the contract on the basis of the weighted vote system.

Thereafter, Mr. Clement's contract was terminated December 31, 1974 as the local organization was without sufficient funds to continue paying his salary. Subsequently, on May 1, 1975 the plaintiff-respondent commenced this action against UCPA and UCPSEW for breach of contract in terminating his employment. A copy of the summons and complaint dated May 13, 1975 was served on the UCPA at its New York office.

The appellant UCPA entered a special appearance in the action contesting the jurisdiction of the Milwaukee County circuit court over the national organization, headquartered in New York. In a hearing on the matter of the court's jurisdiction, the trial court found that UCPA, through the loan agreement and its agents serving on the

UCPSEW Board of Directors, exercised control over the activities of UCPSEW in this state and concluded that the defendant-appellant UCPA is a proper subject of Wisconsin's jurisdiction pursuant to the Wisconsin "long-arm" statute. Sec. 262.05, Stats. (1973). The trial court also found that the UCPA's exercise of control over UCPSEW was not merely on a single occasion or matter, but they were engaging in substantial activitity within the boundaries of the state.

*Issue:*

Does the Wisconsin court, by virtue of secs. 262.05(1) (d), 262.05(4)(a) or 262.05(5)(a) of the Wisconsin "long-arm" statute have personal jurisdiction over the defendant-appellant UCPA, a foreign corporation?

The appellant and respondent agree that the trial court ruled the jurisdiction or the lack thereof would be determined with the application of the three requirements set forth in *Zerbel v. H. L. Federman & Co.*, 48 Wis.2d 54, 179 N.W.2d 872 (1970):

"Rule 1. The nonresident defendant must do some act or consummate some transaction within the forum. . . . A single event will suffice if its effects within the state are substantial enough. . .

"Rule 2. The cause of action must be one which arises out of, or results from the activities of the defendant within the forum.

"Rule 3. Once contact is found, such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' . . ." *Id.* at 63–64.

But it should be pointed out that the parties do not agree that the facts presented herein meet the *Zerbel* test.

In the trial court the plaintiff-respondent argued the existence of jurisdiction over UCPA relying on sec. 262.05(1)(d) and 262.05(5)(a), Stats., since renumbered in the respective subsections of sec. 801.05. The

record discloses that the plaintiff-respondent's (Clement) argument for jurisdiction pursuant to sec. 262.05 (4) (a) was not argued before the trial court and is raised for the first time on appeal. The Wisconsin "long-arm" jurisdiction statute as recited in sec. 262.05 reads in part as follows:

"Sec. 262.05 **Personal jurisdiction, grounds for generally.** A court of this state having jurisdiction of the subject matter has jurisdiction over a person in an action pursuant to s. 262.06 under any of the following circumstances:

"(1) LOCAL PRESENCE OR STATUS. In any action whether arising within or without this state, against a defendant who when the action is commenced

" . . .

"(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.

" . . .

"(4) LOCAL INJURY; FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury either:

"(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

" . . .

"(5) LOCAL SERVICES, GOODS OR CONTRACTS. In any action which:

"(a) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or. . . ."

"This court has indicated that statutes regulating long-arm jurisdiction are to be given a liberal construction in favor of the exercise of jurisdiction." *Stevens v. White Motor Corp.*, 77 Wis.2d 64, 74, 252 N.W.2d 88 (1976); *Flambeau Plastics Corp. v. King Bee Mfg. Co.*, 24 Wis.2d

459, 464, 129 N.W.2d 237 (1964); *Huck v. Chicago, St. P., M., & O. Ry.,* 4 Wis.2d 132, 137, 90 N.W.2d 154 (1958).

In *Nagel v. Crain Cutter Co.,* 50 Wis.2d 638, 184 N.W. 2d 876 (1970), the Wisconsin Supreme Court considered the question of whether a Wisconsin court could exercise personal jurisdiction over a non-resident defendant, a foreign corporation, under the general provisions of sec. 262.05(1)(d), Stats. In determining jurisdiction the court said it "must look to the nature of defendant's activities in Wisconsin to determine whether they were such as to constitute 'substantial and not isolated activities. . .' within the meaning of sec. 262.05(1)(d), Stats." *Id.* at 646. This determination must be made in light of the requirements of due process, combined with all the circumstances and facts surrounding the issue of jurisdiction. *Supra* at 646.

In view of the above language the analysis of whether there is or is not personal jurisdiction over a non-resident defendant under sec. 262.05(1)(d), Stats., involves two considerations:

1. Are defendant's activities in Wisconsin substantial and not isolated? and

2. By holding the defendant amenable to the jurisdiction of the Wisconsin courts, are the requirements of due process fulfilled?

The first consideration concerning the existence of substantial activities within the forum state is required by the specific language of the "long-arm" statute, sec. 262.05(1)(d), Stats. It should be noted that this section corresponds in a general way to the "doing business" statute common in other states and presents a jurisdictional basis distinct from the specific sections of the "long-arm" statute, sec. 262.05(3) through (11). *Nagel v. Crain Cutter Co., supra* at 646.

The second consideration is that of due process because ". . . even if coverage under a long-arm statute exists, the 'due process requirements must still be satisfied.'" *Hasley v. Black, Sivalls & Bryson, Inc.*, 70 Wis. 2d 562, 575, 235 N.W.2d 446 (1975). Due process mandates that a defendant's contacts with the forum state make the requirement of jurisdiction reasonable when taken in context with our federal system courts and government that require a defendant to defend the suit brought therein. *Hasley v. Black, Sivalls & Bryson, Inc., supra* at 481.

The parties appropriately seek the application of the three step jurisdictional process set forth in *Zerbel v. H. L. Federman & Co., supra.* However, judicial analysis must go beyond the framework of *Zerbel* and consider the following in the determination of jurisdictional issues:

"In *Zerbel, supra,* this court adopted an analytical framework for determining the substantiality of defendant's contacts for due process purposes. This framework is equally applicable to cases in which the general provision, sec. 262.05(1), Stats., is to be applied, albeit the required substantiality of contact will be greater. *The factors that this court should consider, then, are the quantity, and the nature and quality of defendant's contacts; the source and connection of the cause of action with those contacts; the interest of the forum state in the action; and the convenience to the parties.* When analyzing the various factors, the court will weigh each and consider them all in relation to each other, rather than merely counting off the presence or absence of each, and the essential question will be the reasonableness of subjecting the particular nonresident defendant to Wisconsin litigation." *Nagel v. Crain Cutter Co., supra* at 648. (Emphasis supplied.)

The above statement of law dealing with the issue of jurisdiction reflects the existence of a single and

encompassing judicial inquiry. The primary question to be determined is whether it is reasonable, *i.e.*, in keeping with the due process tenets of fair play and substantial justice, to assume jurisdiction over UCPA, a foreign corporation, in this action? "The *Nagel* court recognized that concise decision making compelled analysis of the general due process standards alone: facts that satisfy due process would undoubtedly be covered by the flexible language of this 'doing business' statute, while the reverse would not necessarily be true." *Hasley v. Black, Sivalls & Bryson, Inc., supra* at 576. The due process analysis involves consideration of the five factors quoted above; however, the court's approach to this process is qualitative rather than quantitative. *Afram v. Balfour, Maclaine, Inc.*, 63 Wis.2d 702, 713, 218 N.W.2d 288 (1974). If, in view of these factors, it would be reasonable to subject the defendant to the Wisconsin litigation, then the Wisconsin court has jurisdiction based on sec. 262.05 (1) (d), Stats.

Applying the testing factors to the present litigation against UCPA involves consideration of the following facts:

1. *Quantity of Contacts.* UCPA's contact with Wisconsin is based on two important documents, the affiliation charter and the loan agreement between UCPA and UCPSEW.

The affiliation charter designated United Cerebral Palsy of Wisconsin, a domestic corporation incorporated in Wisconsin, as agent in Wisconsin for the national organization, UCPA. As agent for UCPA it was required to act as an intermediary in the transfer of the funds (25% of the gross receipts), raised by UCPSEW in the state of Wisconsin, to the national organization, UCPA. United Cerebral Palsy of Wisconsin was also required to monitor and enforce UCPSEW's compliance

with the by-laws, standards, etc. of UCPA pursuant to the affiliation charter.

The loan agreement provided UCPA with the right to have six representatives of UCPA sit on the UCPSEW Board of Directors and also have voting control of the local organization, UCPSEW. Election of the six UCPA representatives to the local board was a condition precedent to the granting of the loan. The six representatives of UCPA, selected by the national president, were in fact elected to the UCPSEW board pursuant to the terms of the loan agreement and attended the monthly board meetings of UCPSEW, held in Milwaukee. As members of the UCPSEW board, with voting control, these six representatives of UCPA had the controlling voice in the policies and operations of the local board. The $13,000 loan for the year 1974 was made to UCPSEW to cover its expenses of operation in Wisconsin which included its fund raising activities substantially for the benefit of UCPA. If the local chapter defaulted on the loan undoubtedly the Wisconsin courts would be used to collect any amount still due and owing.

Letters and other communications from UCPA were received by UCPSEW in Wisconsin directly from the national offices in New York City. The national organization directed that the transcripts of the local board meetings' minutes were sent to the national field representative in Chicago and the national field director in New York.

2. *Nature and Quality of Contacts.* On the question of the nature and quality of contacts within the state of Wisconsin, the personal and business activities herein were persuasive to the trial court. The trial court found that the national organization exercised *de facto* control of UCPSEW through the voting power of the six UCPA representatives sitting on the UCPSEW Board of Directors and stated in its memorandum decision:

"... the [loan] agreement was carried out in full and that UCPSEW was then and is now controlled by a majority made up of Board members recommendéd and approved by the New York association.

"Pursuant to the new makeup of the board, policies were initiated and decisions were made concerning the UCPSEW's business and operations."

Our court decisions dictate that the standards of review require that we give persuasive weight to the trial court's finding:

"It is elementary that findings of fact by trial courts may not be disturbed on appeal unless the findings are contrary to the great weight and clear preponderance of the evidence. This principle has been stated in almost every volume of Wisconsin Reports." *Weber v. Kole,* 7 Wis.2d 107, 108, 95 N.W.2d 784 (1958).

At the trial, testimony was given regarding repeated examples of UCPA's *de facto* control of UCPSEW: First, the national representatives used their influence to override certain conditions placed on the employment of the Milwaukee campaign director, incidentally, recommended by the national campaign director. Second, at the time Clement's amended contract was negotiated and signed by the local executive board, the UCPA representatives voted in a block to postpone discussion rather than ratify the amended contract and also directed that prior to the next meeting Mr. Schweizer, a UCPA representative, assist in the negotiating of Mr. Clement's contract.

The quality of the contact can also be observed in the fact that UCPA was entitled to 25% of the gross receipts raised by UCPSEW in Wisconsin. UCPA shared substantially in the benefits of UCPSEW's fund raising efforts in Wisconsin.

3. *Source and Connection of the Cause of Action With Those Contacts.* The cause of action is for breach

of contract. The contract allegedly breached was negotiated and ratified by the UCPSEW Board of Directors during the period of time the UCPA representatives exercised *de facto* control of the local organization, UCPSEW. Therefore, plaintiff's breach of contract action is related to the defendant's activities in the forum state.

4. *Interest of the Forum State in the Action.* Wisconsin obviously has a definite interest in providing a forum wherein its citizens may seek legal redress. *Zerbel v. H. L. Federman & Co., supra* at 66. The .record demonstrates that the UCPA representatives controlled the operations of the local organization and if, as a result thereof, they have been responsible for the breach of the plaintiff's contract, then it is proper that the controlling organization, UCPA, be held accountable for the conduct of its business and activities within this state.

5. *Convenience.* While convenience is not the decisive or controlling factor, nevertheless, it should be considered. *Zerbel v. H. L. Federman & Co., supra* at 66. Since the contract, which is the subject of this action for breach, was entered into in Wisconsin and also involved services performed in Wisconsin, it would be convenient to litigate the action in this state. Another factor of forum convenience is that many of the prospective witnesses are located in Wisconsin as well as the pertinent records of UCPSEW, Mr. Clement's employer.

In light of the discussion of the above five factors, we hold it reasonable and in keeping with the due process tenets of fair play and substantial justice for the Wisconsin courts to exercise personal jurisdiction over the defendant-appellant, UCPA, pursuant to the "long-arm" statute. The record demonstrates that UCPA's activities in Wisconsin have "certain minimum contacts with [the

forum] such that the maintenance of the suit does not offend traditional motions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) ; *See also: Shaffer v. Heitner,* 433 U.S. 186 (1977) ; *Oxmans' Erwin Meat Co. v. Blacketer,* 86 Wis.2d 683, 273 N.W.2d 285 (1979). Therefore, extending jurisdiction over this non-resident defendant in light of the facts of this case, pursuant to sec. 262.05 (1)`(d), Stats., satisfies due process and also meets the statutory requirements of substantial activities in the state.

In view of the applicability of sec. 262.05(1)(d), Stats., to our holding that the Wisconsin courts have personal jurisdiction over UCPA, a foreign corporation, we find it unnecessary to consider whether the defendant-appellant was subject to Wisconsin jurisdiction under sec. 262.05(4)(a) and 262.05(5)(a).

*By the Court.*—Order affirmed.