STEVENS, Plaintiff, v. WHITE MOTOR CORPORATION, Defendant-Respondent: CUTLER METAL PRODUCTS COMPANY, Defendant-Appellant.

*No. 75-301. Submitted on briefs March 3, 1977.—*
*Decided March 29, 1977.*
(Also reported in 252 N. W. 2d 88.)

For the appellant the cause was submitted on the briefs of *Aberg, Bell, Blake & Metzner, S. C.* of Madison.

For White Motor Corporation the cause was submitted on the brief of *Campbell, Brennan, Steil & Ryan, S. C.* of Janesville.

For Delbert J. Stevens the cause was submitted on the brief of *Axley, Brynelson, Herrick & Gehl* of Madison.

ABRAHAMSON, J.   Cutler Metal Products Company appeals from an order holding it amenable to process of a Wisconsin court under this state's "long arm" statute, sec. 262.05, Stats. 1971 (renumbered to sec. 801.05, Stats., effective January 1, 1976). The dispositive issue is whether the record supports the trial court's finding that the facts requisite to jurisdiction under subsec. (4) (b) of the statute[1] are present in this case.

[1] Sec. 262.05, Stats. 1971, provides in part:

## I.

The facts may be summarized as follows: This is an action to recover damages for personal injuries sustained by the plaintiff, Delbert J. Stevens, on June 15, 1971. The complaint alleges that Stevens was injured at the Janesville, Wisconsin, terminal of the Schwerman Trucking Company, by whom Stevens was employed as a driver, when an aluminum air pressure tank installed on a Schwerman truck exploded as Stevens was entering the vehicle's cab. Amputation of Stevens' right leg was required as a result of the explosion. Defendant White Motor Company manufactured the truck involved in the accident and sold it to the Schwerman Trucking Company. Defendant Cutler Metal Products Company manufactured the air tank, which served as a reservoir for the air brake and air starting systems of the truck, and sold it to the White Motor Company. The complaint sets up against each defendant causes of action for negligence and for product liability.

As provided in sec. 262.16(2)(c), Stats. 1971, defendant Cutler objected in its answer to the assertion of jurisdiction over it by the Wisconsin court. So much of the facts as are undisputed on this appeal show that Cutler is a New Jersey corporation having its only manufacturing facility and office in Camden, New Jersey. Personal service in this action was effected upon Cutler

"A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 262.06 under any of the following circumstances:

". . .

"(4) In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury . . . .

"(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

there. The manufacture of automotive parts for the trucking industry constitutes 80 to 85 percent of Cutler's business. It produces a variety of parts ranging in unit cost from 35¢ to $5,000, but its major product line, making up approximately 70 percent of its automotive business, is fuel tanks. Air and hydraulic tanks account for about 15 percent of Cutler's automotive trade. It does not manufacture standard products, all parts being manufactured to specifications provided by its customers. Cutler is a component part manufacturer; its products are sold to other manufacturers who incorporate them into finished products, such as trucks, for sale to the ultimate user.

In 1971 Cutler employed approximately 220 persons and had sales of $4.7 million. There are apparently but three other firms competitive with Cutler in the production of fuel and air tanks for trucks. White Motor Company is Cutler's third largest customer in dollar volume, with sales of $780,000 in 1970 and $576,000 in 1971, most of which represented sales of fuel tanks. Cutler has been selling truck air tanks to White since sometime in the 1950's, and sold White 476 air starting tanks of the particular type here involved between May of 1967 and May of 1970. With respect to the expected end use of Cutler's products, Mr. H. H. Cutler, president of the company, gave the following testimony at his deposition:

"Q. . . . . you would not be surprised to find your products on trucks in Florida, overseas, or wherever, would you?

"A. No. I would expect that wherever they sold their truck and could deliver. I would not be surprised, no.

". . .

"A. [I]f you are asking me where they go—I don't know. I have to assume that if its trucks, they are traveling, naturally, from state to state. That's, I think, a basic—the use of a truck."

Cutler ships its products to customers via common carrier. No agent or employee of Cutler has ever been in

Wisconsin carrying on business. As to its automotive products, Cutler has five or six customers located in seven states, Wisconsin not among them, and Canada. Howard G. Halvorsen, service manager of what prior to June, 1971 was the Milwaukee factory branch of White Motors, stated in his deposition that Cutler air tanks "might have been" shipped directly to Milwaukee. However, there is no evidence in the record that this did occur in fact, and H. H. Cutler testified that all of his company's products ordered by White Motor Company were shipped to White's Cleveland plant.

On this state of facts the trial court concluded by memorandum decision of April 30, 1975, that it had jurisdiction over Cutler Metal Products Company pursuant to sec. 262.05 (4) (b), Stats. 1971 (*supra* note 1). Inasmuch as no decision of this court construing subsec. (4) (b) was available at that time, the trial court relied upon *McPhee v. Simonds Saw & Steel Co.*, 294 F. Supp. 779, 782 (W.D. Wis. 1969) in which the Federal District Court for the Western District of Wisconsin construed the statute to require that, at the time of the injury alleged, more than one item processed, serviced or manufactured by the defendant was used or consumed within Wisconsin in the ordinary course of trade. As we read the trial court's decision, it adopted the interpretation given the statute in *McPhee* and found that the requirement of two or more products was met. An order overruling Cutler's jurisdictional objection was entered on May 14, 1975, and the instant appeal followed.

## II.

At the outset it may be noted that Cutler has not claimed either in the trial court or on appeal that subjecting it to the jurisdiction of this state would work a

denial of due process of law. Cutler virtually concedes that there are present in this case

"... such contacts of the [defendant] with the state of the forum as make it reasonable, in the context of our federal system of government, to require the [defendant] to defend the particular suit which is brought there." *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

Defendant Cutler sells the bulk of its products to truck manufacturers, and does so with the admitted expectation that trucks incorporating those products will be sold and used throughout the United States, including the State of Wisconsin. The injury that is the subject of this action arose directly from a Cutler product, allegedly defective, which made its way here in the ordinary course of trade. Under the circumstances Cutler's concession on the due process issue is well advised. *See Buckeye Boiler Co. v. Superior Court of Los Angeles County,* 71 Cal.2d 893, 80 Cal. Rptr. 113, 458 P.2d 57 (1969); *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961); Annot., *Products Liability: In Personam Jurisdiction over Nonresident Manufacturer or Seller Under "Long-Arm" Statutes,* 19 A.L.R.3d 13 (1968). In any event, where jurisdictional facts sufficient under sec. 262.05, Stats., are shown, as we conclude below is the case here, due process requirements are prima facie satisfied as well.[2]

---

[2] In the recent case of *Fields v. Playboy Club of Lake Geneva, Inc.,* 75 Wis.2d 644, 653, 654, 250 N.W.2d 311 (1977), this court said:

"Although this court in *Zerbel v. H. L. Federman & Co.,* 48 Wis.2d 54, 179 N.W.2d 872 (1970), made a separate analysis for the purpose of determining whether the jurisdictional contacts which satisfied the statute were also sufficient as a matter of due process, we believe this additional analysis to be unnecessary in the ordinary case. We stated in *Afram v. Balfour Maclaine, Inc.,* 63 Wis.2d 702, 713, 218 N.W.2d 288 (1974):

### III.

As stated above, the trial court construed sec. 262.05 (4) (b), Stats. 1971, to require that, at the time of the injury herein, more than one Cutler product has been used in this state in the ordinary course of trade. The trial court's ruling in this regard is not disputed by the parties, and is consistent with this court's decision in *Hasley v. Black, Sivalls & Bryson, Inc.*, 70 Wis.2d 562, 579, 580, 235 N.W.2d 446 (1975), rendered while the instant appeal was pending. Accordingly, we move to a consideration of what in our view is the only issue presented by this case: whether there is support in the evidence for the finding that as of June, 1971, more than one product manufactured by Cutler was used in Wisconsin in the ordinary course of trade.[3] If there is credible evidence in the record upon which the trial court's finding could be based, it will stand unless against the great weight and clear preponderance of the evidence.

---

" 'While we have adopted a methodology of appraising jurisdictional contacts (*Zerbel v. H.L. Federman & Co.* (1970), 48 Wis.2d 54, 65, 179 N.W.2d 872, and *Nagel v. Crain Cutter Co.* (1971), 50 Wis.2d 638, 648, 184 N.W.2d 876), such analysis is unnecessary here. The standards set by sec. 262.05, Stats., if met, prima facie meet the constitutional demands of *Pennoyer v. Neff* (1877), 95 U.S. 714, 24 L.Ed. 565, and *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95. If the transaction has the necessary qualitative relationship to the forum as spelled out in the various subsections of sec. 262.05, the constitutional objection is prima facie at least surmounted. What is listed are situations or transactions in which it is not unfair or a denial of due process to extend Wisconsin's long arm of jurisdiction to a nonresident defendant.' "

[3] No formal findings of fact were made in this case. However, where this is so, statements of fact appearing in a memorandum decision will be accorded the status of findings of fact. *Dombrowski v. Tomasino*, 27 Wis.2d 378, 386, 134 N.W.2d 420 (1965).

We have already set forth the general nature of Cutler's business. The record establishes that the bulk of Cutler Metal Products Company's multimillion dollar annual sales consist of component parts, principally tanks, sold to manufacturers of trucks. This was true in 1971 and for a considerable period before that year. In addition to White Motor Company, Cutler numbered among its customers the Ford Motor Company, Diamond Reo, Dodge and Mack. Cutler is apparently one of but four firms competing in its principal product lines, with sales to the trucking industry of approximately 3.75 million dollars in 1971. It is common knowledge that a large number of trucks have for many years traveled in and through this state, and that trucks manufactured by some, if not all, of Cutler's customers have been present in Wisconsin.

The record also contains the deposition of Howard G. Halvorsen, Service Manager of White Wisconsin Trucks, Inc., a dealership, which prior to June 15, 1971 (coincidentally the date of the accident herein) had been the Milwaukee factory branch of defendant White Motor Company. Halvorsen had been Service Manager of the Milwaukee factory branch before it became independent. He testified as follows:

"*Q.* You have seen Cutler air tanks before, have you not?
"*A.* Yes, sir.
" . .

"*Q.* For years White Motor has purchased Cutler Metal Products starting tanks, have they not?
"*A.* Yes, sir.
"*Q.* To your knowledge before June 15, 1971, did the factory branch in Milwaukee ever purchase any air starting tanks from Cutler Metal Products directly?
"*A.* No, they did not. They might have been shipped directly but never purchased or ordered directly.
" . . .

"Q. You also testified that in your personal knowledge you never ordered any air starter tanks from Cutler or any other manufacturer direct, is that correct?

"A. That's correct. All our ordering is done directly from our Cleveland Central Parts Department.

"Q. But you indicate that it is possible that a tank could be shipped direct to you as a branch from the manufacturer, is that correct?

"A. Yes. Our home office would notify the tank manufacturer, give them a ship direct purchase order. . . ."

It is apparent that the 900-page record in this case, consisting for the most part of depositions concerned with matters relating to the merits, was not made with an eye to pinpointing the presence of Cutler products in Wisconsin. It would have been better had this been done. However, we think the record provided a sufficient basis for the trial court's finding that the requirements of sec. 262.05 (4) (b), Stats., are met. A reasonable inference from the record is that a substantial, though indefinite, number of Cutler products were installed on trucks used in this state in the ordinary course of trade at and before the time of the injury to Delbert Stevens. Considering the nature of Cutler's business, as a major supplier of component parts for trucks, it is difficult to see how the trial court could have found the fact other than it did.[4]

---

[4] The trial court also found in its memorandum decision that air tanks had been shipped by Cutler directly to Milwaukee. The testimony of Halvorsen quoted above was relied upon by the trial court for this finding. On the other hand, H. H. Cutler denied the direct shipping to Milwaukee in his deposition, as did Cutler's answers to plaintiff's interrogatories. However, this finding is not significant with respect to jurisdiction under sec. 262.05 (4) (b), Stats. The exact route by which products reach this state is unimportant, so long as it is shown that they were used here in the ordinary course of trade. That requirement is clearly met here; Cutler admittedly was in the business of selling air

We find wholly unpersuasive Cutler's assertion that findings of the facts required for jurisdiction under the statute may not be made by inference. This argument rests on a supposed distinction between the mode of analysis appropriate under the statute and the mode to be used where a due process challenge is involved. Cutler claims that inferences are proper in the latter instance, but not the former. However, the posited distinction is largely non-existent. The various jurisdictional bases defined in sec. 262.05, Stats., in sum, were intended by the legislature to be substantially congruent to the field in which jurisdiction may be exercised consistently with modern notions of due process of law developed after the *International Shoe* decision. *See Fields v. Playboy Club of Lake Geneva,* note 2, *supra; Flambeau Plastics Corp. v. King Bee Mfg. Co.,* 24 Wis.2d 459, 464, 129 N.W.2d 237 (1964). This court has indicated that statutes regulating long-arm jurisdiction are to be given a liberal construction in favor of the exercise of jurisdiction. *See Huck v. Chicago, St. P., M. & O. Ry.,* 4 Wis.2d 132, 137, 90 N.W.2d 154 (1958) ; *Flambeau Plastics Corp., supra,* at 464. We see nothing under any view of sec. 262.05(4)(b) which requires, or even suggests, the artificial and narrow standard of proof for which Cutler contends.[5]

---

starting tanks and other tanks to White Motor Company for installation on trucks, and White was in the business of selling its trucks to users in Wisconsin. The pattern by which Cutler's products came to be used in this state was the expected and ordinary result of the business carried on by Cutler and White.

[5] *See* Revision Notes of Prof. G. W. Foster, printed in the 1970 Wisconsin Annotation and in the pocket supplement to Volume 30 of the Wisconsin Statutes Annotated. Prof. Foster's notes to sec. 262.05(4) confirm that a narrow application of the statute was not intended. It appears that the principal consideration underlying subsec. (4)(b) is that an ordinary, foreseeable or expected result of the defendant's activities has been a contact of the specified nature with this state. A minimal pattern of activity relating to the state in the ordinary course of commercial

Cutler's reliance on *Hasley v. Black, Sivalls & Bryson, Inc., supra,* is misplaced. In that case the court held that the bare minimum requirements of the statute were satisfied by directly tracing two products made by the defendant to a Wisconsin purchaser. The relevance of this evidence was in showing that the products which were present were present in the ordinary course of trade. *Hasley* indicated that the statute *may* be satisfied by such proof, but it did not hold that this type of evidence *must* be produced in every case. In fact, the contrary was recognized:

"A satisfactory demonstration of compliance with those conditions [at least two items in the ordinary course of trade] would indicate other goods of the defendant were also within the forum at the time of the accident, *even if the lack of commercial records or the multiplicity of distributive outlets prevents effective tracing* of the ultimate use of a product line." *Id.,* 70 Wis.2d, at 580 (Emphasis supplied.)

It is the general rule in both civil and criminal cases that the trier of fact is not limited to facts directly proven, but may find any or all of the material facts in the case by reasonable inferences drawn from circumstantial evidence. *Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971); *Tri City Fur Foods, Inc. v. Ammerman,* 7 Wis.2d 149, 152, 153, 96 N.W.2d 495 (1959); *Reichert v. Rex Associates Co.,* 228 Wis. 425, 439, 279 N.W. 645 (1938). Cutler has given neither reason nor authority why this rule should not apply in the case at bar. Findings of the facts requisite to jurisdiction under Wisconsin's long-arm statute may properly be made, as they were here, by reasonable inference from facts proven in the record.

*By the Court.*—Order affirmed.

---

activities is requisite. The nature of Cutler's business makes it abundantly clear that the statute is satisfied here.