**HALL'S SPECIALTIES, INC.,
Plaintiff-Appellant,**

v.

**Fred SCHUPBACH, Jr., d/b/a
Schupbach Trucks, et al.,
Defendant-Appellee.**

**No. 84–1303.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 15, 1984.

Decided March 29, 1985.

Rehearing and Rehearing En Banc Denied
April 30, 1985.

Douglas E. Johnston, Tourkow, Danehy, Crell & Rosenblatt, Fort Wayne, Ind., for plaintiff-appellant.

James P. Fenton, Barrett, Barrett & McNagny, Fort Wayne, Ind., for defendant-appellee.

Before FLAUM, Circuit Judge, PELL, Senior Circuit Judge, and EVANS, District Judge *.

TERENCE T. EVANS, District Judge.

We consider the appeal of Hall's Specialties, Inc. (Hall) from a decision of the district court, dismissing this case for lack of personal jurisdiction over Fred Schupbach Jr. d/b/a Schupbach Trucks.

Hall filed a complaint in the District Court for the Northern District of Indiana, Fort Wayne Division, on April 3, 1981, naming Schupbach and Eureka Welding Company (EWCO) as defendants. Federal jurisdiction was based on diversity of citizenship. EWCO failed to answer the complaint, and on January 29, 1983, a default judgment was entered against it. Meanwhile, Schupbach filed a motion for dismissal of the action, claiming, among other things, that the court did not have personal jurisdiction over him. On November 10, 1981, his motion was denied.[1] In March of 1983, a jury trial was conducted on Hall's claims. It ended when a verdict was returned in favor of Hall in the amount of $23,440.00. Schupbach filed post-trial motions, including a renewed motion to dismiss for lack of personal jurisdiction. On January 26, 1984, the motion was granted, the verdict was set aside, and the case dismissed.

Schupbach raises a threshold question regarding our jurisdiction to entertain this appeal. We are satisfied, however, that jurisdiction is present, and thus we go directly to the merits, the propriety of granting Schupbach's jurisdictional motion to dismiss.

Hall is an Indiana corporation with its principal office in De Kalb County, Indiana. Schupbach is the sole proprietor of Schupbach Trucks of Bradford, Illinois. As a sideline, Schupbach sells tanker transports. The other defendant, no longer involved in this case, is EWCO, Inc., of Eureka, Illinois, a business which tests and repairs tanker transports.

Advertisements depicting a tanker which Schupbach had for sale appeared in the "Indiana Prairie Farmer" magazine. After seeing the ad, Hall contacted Schupbach about the tanker. Schupbach sent Hall pictures and literature relating to the tanker. On December 8, 1979, Hall went to Illinois, purchased the tanker, and transported it back to Indiana. After using the tanker a few times, Hall discovered a crack which made it unfit for the use for which it was purchased—that is, to transport anhydrous ammonia. After the crack was discovered, Schupbach and Hall conducted discussions relating to the condition of the tanker. They decided that it should be transported to EWCO for repairs. While the tanker was in the possession of EWCO in Illinois, it was totally destroyed during a test.

This case joins a long list of cases that have presented personal jurisdiction, minimum contacts, and due process issues regarding the permissible constitutional reach of state long-arm statutes. When an issue is repeatedly presented, courts, understandably, prefer that it at least be interesting. Unfortunately, the legal issues raised in these cases are rather dull. If Judge Wapner had to worry about personal jurisdiction, "The People's Court" would not be on television. A greater sin than dullness, however, is that the cases are often difficult to decide because the body of law that has developed is confusing and contradictory. Put these issues to a panel of judges and you're apt to get a split decision. In *Lakeside Bridge and Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir.1979), *cert. den.*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), for example, the court cited 22 cases

---

* The Honorable Terence T. Evans, Judge of the United States District Court for the Eastern District of Wisconsin, is sitting by designation.

1. The motion was denied by then District Court Judge Jesse Eschbach because he found, on the affidavits submitted, that Hall had "... met its *prima facie* burden of establishing that the defendant knowingly advertised for sale the allegedly defective vehicle in Indiana...."

in which lower courts had split 14–8 on personal jurisdiction questions involving purchasers and sellers from different states.

Unlike some of the cases discussed in *Lakeside*, the situation here is not terribly complex. An Indiana resident read an ad in an Indiana publication that offered a specific item (a 1963 Trinity propane anhydrous ammonia tanker transport) for sale. The ad stated that the seller was from Illinois. Mr. Indiana, in direct response to the ad, telephoned Mr. Illinois to discuss the tanker, and Mr. Illinois sent pictures and literature about the tanker to Mr. Indiana. Mr. Indiana traveled to Illinois, examined the tanker, decided to purchase it, did so, and transported it back to Indiana. The tanker soon proved to be defective (the fact that it ultimately blew up is not important on the jurisdictional issue), and this suit essentially for breach of warranty and rescission of the sales contract was born.

Now, one would think that in a rational system, especially one that seeks (or should seek) clarity and definiteness, experienced lawyers could simply and with conviction unanimously answer Mr. Indiana's question: "Can I sue the guy who sold me the tanker here in Indiana?" But alas we know, to our embarrassment, that the only honest answer the lawyer can probably give is a "Gee, I can't say for sure." *See Wisconsin Elec. Mfg. Co., Inc. v. Pennant Products*, 619 F.2d 676, 679 (7th Cir.1980), construing the often-discussed *Lakeside Bridge* case, where the court observes:

"Ironically, the same court whose judgment was reversed in *Lakeside* dismissed this action in the reasonable belief that this case was close enough to *Lakeside* to be decided the same way. We appreciate and sympathize with the position of that court and other trial courts, state and federal, that must so frequently decide an amorphous federal constitutional question in order to determine whether service of process has been effective in an otherwise routine case. So long as long-arm jurisdiction reaches to the outermost limits due process will

permit and so long as due process standards continue to be susceptible only of a case-by-case application, reasonable minds will differ in particular cases and the 'degree of predictability to the legal system' desired by the Supreme Court, *World-Wide Volkswagen Corp., supra* [444 U.S. 286], 100 S.Ct. at 567 [62 L.Ed.2d 490], will prove elusive. A strong case could be made for a set of concrete, objective standards, at least as a statutory matter, however arbitrary they might seem in individual cases, that would enable litigants to determine whether jurisdiction was present without taking the question to a reviewing court."

Recognizing the difficulty inherent in these cases, this court's recent decision in *Madison Consulting Group v. The State of South Carolina*, 752 F.2d 1193 (7th Cir. 1985), may prove to be helpful in resolving future problems as it clearly moves in the direction of establishing more objective and concrete standards to apply to personal jurisdiction issues. In *Madison*, the court exhaustively reviewed the mish-mash of personal jurisdiction-minimum contacts-due process cases spawned over the years. What the court in *Madison* underscored was the importance of looking to who initiated or solicited a business transaction in a suit arising out of the transaction. Here, that person is Schupbach. He did so by placing an ad in the "Illinois Prairie Farmer" that found its way into the "Indiana Prairie Farmer." After Hall read the ad, a chain of events started that culminated in the sale.

None of those events, however, occurred in Indiana, and thus, the question becomes is the ad enough? Judge Lee, in his meticulous district court decision, found that Schupbach did not "knowingly" cause the ad to appear in the Indiana publication. Subject to review under the not-clearly-erroneous standard, we accept that fact as true. Given the conclusion, then, that Schupbach did nothing to knowingly cause the ad to appear in Indiana, we conclude that he did not purposely avail himself of

the privilege of doing business in Indiana and thus did not invoke the benefits and protections of that forum's laws. To make Schupbach susceptible to suit in Indiana we believe he would have had to knowingly solicit (in more than a general way) the sale there. Had he done so, his voluntary action would have been calculated to have an effect in Indiana. In such a situation, due process would not be offended by requiring him to go to Indiana and defend himself if the sale turned sour. Here, his actions were not knowingly taken and the order of the district court must be AFFIRMED.

FLAUM, Circuit Judge, dissenting.

The majority holds that a federal district court sitting in Indiana properly dismissed a suit by an Indiana plaintiff against an Illinois defendant after the suit had already culminated in a two-day jury trial and a verdict for the plaintiff, essentially on the basis that the defendant should never have been sued in Indiana in the first place. This result—while lamentable as a matter of judicial efficiency—would be compelled by the Due Process Clause if the evidence introduced at trial failed to show that the Illinois defendant had in some way purposefully availed himself of the privilege of doing business in Indiana, as the majority concludes. *See ante* at 217; *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Because I believe that the advertisement and solicitation of business in Indiana that the defendant described in his own trial testimony do satisfy the purposeful availment requirement, however, I respectfully dissent.

The majority notes our recent decision in *Madison Consulting Group v. The State*

*of South Carolina,* 752 F.2d 1193 (7th Cir. 1985), holding that a nonresident defendant who solicited a business transaction with a plaintiff from Wisconsin could be sued in Wisconsin on a cause of action arising out of that transaction. It nevertheless proceeds to hold that Fred Schupbach, Jr., d/b/a Schupbach Trucks ("Schupbach"), of Illinois cannot be sued in Indiana by Hall's Specialties, Inc. ("Hall's") of Indiana on a cause of action related to Schupbach's sale of a tanker transport to Hall's, despite the fact that the sale resulted from Hall's reading of Schupbach's advertisement for the transport in the "Indiana Prairie Farmer" magazine. The majority rests its holding on the district court's finding of fact that Schupbach did not know or intend that the specific advertisement that Hall's read— which Schupbach placed in the *"Illinois* Prairie Farmer"—would later appear specifically in the *"Indiana* Prairie Farmer." [2] I agree that this finding itself is not clearly erroneous, and would join the majority if Schupbach's solicitation of business in Indiana were limited to the fortuitous appearance of this one advertisement in the "Indiana Prairie Farmer." Mr. Schupbach's trial testimony, however, reveals otherwise.

Beginning with the general role of advertising in his business of selling tanker transports, the defendant testified on direct as follows:

Q: How would you then sell this product? What means did you use to market this?

A: Advertising in trade publications, the Prairie Farmer. I used a propane publication once and awhile called Butane-Propane News.

2. The district court supported its dismissal of the suit for lack of personal jurisdiction with additional analysis to the effect that: 1) Hall's cause of action does not arise out of Schupbach's activity in Indiana, because the transport was purchased in Illinois, any misrepresentations or breaches of warranty occurred there, and the transport was ultimately destroyed in Illinois, *Hall's Specialties, Inc. v. Schupbach,* No. F 81–80, slip op. at 28–30 (N.D.Ind.1984), and 2) the exercise of jurisdiction over Schupbach would be fundamentally unfair because his

sales and solicitation of business in Indiana constituted "isolated occurrences" and not "continuing conduct purposefully intend[ed] to preserve and enlarge an active market," *id.* at 34–36.

Although I also reject much of this analysis, I decline to discuss it here except insofar as it relates to my discussion of Schupbach's purposeful availment of the privilege of conducting business in Indiana, which the majority seems to agree is the crucial issue in this case.

Q: And the circulation of these particular publications were they limited to the State of Illinois?

A: No, they weren't.

Q: You sold vehicles in places other than Illinois; is that right?

A: Right.

This testimony indicates that Schupbach's business was not exclusively local, but rather involved the advertisement and sale of transports outside of Illinois.

As to the specific advertisement for the tanker transport at issue in this case, which appeared and was read by Hall's in the "Indiana Prairie Farmer," Schupbach testified:

Q: How did you advertise this particular vehicle for sale?

A: I had it in the Prairie Farmer.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: Were you aware that the Prairie Farmer was distributed both in Illinois and Indiana?

A: I wasn't at the time but I am now.

Q: As a matter of fact, *the previous vehicle that you had advertised in the Prairie Farmer was sold in the State of Indiana; was it not?*

A: *That is true.* Normally, I would get a call from a customer, say in New York, and he would tell me he saw it in the Prairie Farmer. *I assumed he had subscribed to the Illinois issue of the Prairie Farmer.* [Emphasis added].

Taken as a whole, this testimony establishes Schupbach's knowledge that some edition of the Prairie Farmer containing his advertisements was being distributed outside of Illinois—and specifically in Indiana—and suggests his ignorance only of the fact that the advertisements he placed in the Illinois edition were being reprinted in the Indiana edition.

Any remaining ambiguity concerning Schupbach's knowledge that his advertisements were appearing in publications circulated in Indiana was dispelled by his testimony about his previous sale of a tanker transport to a customer in Indiana, which

he alluded to above. Schupbach testified that this sale, which took place in the spring of 1976, was made to none other than Ned Hall, of Hall's Specialties. Moreover, he explained the events giving rise to this sale to Hall's as follows: "I had the transport advertised in the Prairie Farmer and he read the ad and he and his wife drove over to look at the trailer and they decided they would buy the trailer."

Viewed in light of this testimony, the real fortuity in this case is not that Schupbach's advertisement for the tanker transport appeared in a publication circulated in Indiana (and thereby led to a sale of the transport to an Indiana resident and ultimately to this lawsuit), but that Hall's read the advertisement in the "Indiana Prairie Farmer" rather than the "Illinois Prairie Farmer" or some other publication. While Schupbach's solicitation of business in Indiana may not be sufficient purposeful availment to make him amenable to suit in Indiana on a cause of action unrelated to that solicitation, *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), it should be sufficient to make him amenable to suit in Indiana on the present cause of action growing directly out of that solicitation.

The district court's, and now the majority's, holding to the contrary is based upon an overly narrow and technical construction of the "minimum contacts" test for personal jurisdiction, a test that ultimately derives from the requirement that the maintenance of a suit in the forum state "not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). *See also Madison Consulting Group,* 752 F.2d at 1197–1200 (discussing recent Supreme Court decisions). I would hold that on the facts of this case, "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there" on the present

cause of action. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).