**UNI-BOND, LTD., Plaintiff,**

v.

**Leonard SCHULTZ, d/b/a the "Schultz Group", Defendant.**

No. 83–C–907.

United States District Court,
E.D. Wisconsin.

May 2, 1985.

---

Ross A. Anderson, Milwaukee, Wis., for plaintiff.

Jeffrey Clark, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

Presently before the Court are the plaintiff's motion to remand this matter to the state court in which the complaint was initially filed, pursuant to 28 U.S.C. § 1447(c), and the defendant's motion to dismiss the action in toto for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The Court, having reviewed the legal memoranda submitted by the parties and considered the opposing positions articulated therein, concludes, for the reasons set forth below, that the motion to remand must be denied and the motion to dismiss granted.

## BACKGROUND

This action was initiated on April 28, 1983, when the plaintiff filed its complaint in the Wisconsin Circuit Court for Milwaukee County, claiming certain damages allegedly arising out of the breach of a written contract entered into by the parties. According to the terms of that contract, executed on or about April 30, 1980, the plaintiff agreed to pay the sum of $250,-000.00 plus a royalty of 7% of the gross selling price to purchase a certain chemical formula developed and owned by the defendant. That formula was for a polymer or pre-polymer construction material to be used as a building alternative for concrete and asphalt.

The contract further provided that the plaintiff pay an initial $50,000.00 installment within 21 days of the date of execution and the balance of $200,000.00 in twelve equal quarterly installments, beginning either one year after the first sale of the construction material or eighteen months after execution of the contract, whichever came first. The defendant purportedly agreed to deliver the formula to the plaintiff upon receipt of the initial $50,-000.00 payment. However, according to the central factual averment in the complaint, the defendant failed to deliver the chemical formula as promised, despite the plaintiff's payment of the initial installment on or about May 21, 1980.

The two principal causes of action are based on theories of breach of contract, pursuant to which the plaintiff claims damages in the amount of $75,000.00, and fraudulent conversion—that is, that the defendant allegedly failed to return the $50,-000.00 installment despite the plaintiff's request for repayment. With respect to this count, the plaintiff seeks $50,000.00 in com-

pensatory damages and an amount not to exceed $250,000.00 in punitive damages.

In the alternative, the complaint states causes of action for intentional and negligent misrepresentation and misrepresentation giving rise to strict liability; these claims are premised on the defendant's purportedly false representation that he had developed and did possess a commercially usable chemical formula for a polymer or pre-polymer building material. By each of these alternative counts, the plaintiff seeks $75,000.00 in compensatory damages plus punitive damages in an amount not to exceed $250,000.00.

Upon the defendant's petition of July 18, 1983, this action was removed to the United States District Court for the Eastern District of Wisconsin, pursuant to 28 U.S.C. §§ 1441 & 1446. Invoking the Court's diversity jurisdiction, as established under 28 U.S.C. § 1332(a)(1), the defendant alleged in its removal petition that the parties to this action are citizens of different states and that the matter in controversy exceeds the sum or value of $10,000.00, exclusive of interest and costs. Accompanying the defendant's petition was an appropriate bond, insuring, pursuant to 28 U.S.C. § 1446(d), that the defendant will pay all expenses attendant upon the removal proceedings if it is determined that the case is not removable or was improperly removed.

Three days later, on July 21, 1983, the defendant filed its motion to dismiss the complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Invoking the well-established principle that a nonresident defendant must have sufficient minimum contacts with a forum state as a condition precedent to the exercise of personal jurisdiction over it, the movant maintains that he does not have the requisite relationship with the State of Wisconsin for purposes of the present action and, accordingly, that the complaint against him must be dismissed. The defendant further contends that both the relevant analysis and the result articulated by the Court of Appeals for the Seventh Circuit in *Lakeside*

*Bridge & Steel Company v. Mountain State Construction Company*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), compel a finding of lack of personal jurisdiction under the particular circumstances of this lawsuit.

By its responsive memorandum of November 8, 1983, the plaintiff contends that the propriety of this Court's exercise of personal jurisdiction is plainly established under both the relevant provisions of Wisconsin's long-arm statute, Wis.Stat. § 801.05(5) (1977), and generally-accepted constitutional principles as applied to the particular facts of this case. As to the former, the plaintiff argues that, pursuant to the unequivocal terms of the parties' contract, the defendant engaged in a "single act" that effectively makes him subject to the jurisdiction of the courts of this state. Wis.Stat. § 801.05(5) (1977). Observing that compliance with the statutory requirements for the exercise of personal jurisdiction under Wis.Stat. § 801.05(5) gives rise to a presumption that constitutional due process considerations have likewise been satisfied, the plaintiff nonetheless characterizes the defendant's contacts with the State of Wisconsin as sufficient to meet any constitutional challenge to the exercise of jurisdiction over this nonresident party.

Those contacts are clearly established by the very nature of the continuing relationship envisioned by the contract between the parties, pursuant to which all significant developments in the project were to be accomplished in Wisconsin, and, significantly, by the appearance in the state of one of the defendant's representatives for the purpose of exhibition and presentation of the chemical formula, or so the argument goes. Citing *Wisconsin Electrical Manufacturing Company v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir.1980), the plaintiff contends that dismissal of the complaint would prove wholly unjustified under these facts and that the authority cited by the defendant in support of his position is entirely distinguishable.

Predictably, the movant argues in reply that the circumstances under which one of his representatives appeared in the state do not support the exercise of personal jurisdiction; that the nature of the continuing, contractual relationship between the parties, including the exchange of telephone calls and correspondence in interstate commerce, does not satisfy the requirements of due process as established by the Fourteenth Amendment to the United States Constitution; and that it is the caselaw invoked by the plaintiff that is, in fact, inapposite.

In the midst of the parties' briefing of the motion to dismiss, the plaintiff, on July 27, 1983, moved to remand this action to the state court in which it was initiated, pursuant to 28 U.S.C. § 1447(c). In support of its petition, the plaintiff explains that this lawsuit was commenced on April 28, 1983, that personal service on the defendant was unsuccessfully attempted through a process server in the State of Michigan, but that service was eventually accomplished by mailing the summons and complaint to the defendant on June 9, 1983, and publishing the summons as a Class 3 notice in *The Detroit Legal News* on June 15, June 22, & June 29, 1983. The plaintiff further recounts the nature of a conversation its attorney had with defense counsel on June 21, 1983, during the course of which counsel indicated that his client had received the summons and complaint. Invoking the unequivocal requirement of 28 U.S.C. § 1446(b) that a petition for removal from state to federal court must be filed within 30 days after receipt of those documents, the movant observes, first, that the present petition was filed some 39 days after the summons and complaint were mailed on June 9, 1983, and, second, that those materials were presumptively received by the defendant three days thereafter. It is the plaintiff's final position that unless the defendant can demonstrate receipt of process on or after June 18, 1983, the petition for removal must be dismissed as untimely and the case remanded back to the Wisconsin Circuit Court for Milwaukee County.

By its responsive brief of November 3, 1983, the defendant maintains simply that he did, in fact, receive the summons and complaint in this action on June 18, 1983, nine days after mailing. In this context, the defendant further disputes the movant's description of presumptive receipt within three days as unsupported in the relevant, federal procedural law. The defendant concludes simply that remand would be inappropriate since the removal petition was, indeed, filed with the federal district court within thirty days of receipt of process, as prescribed by 28 U.S.C. § 1446(b).

Because the Court views the plaintiff's challenge to the propriety of removal as a threshold jurisdictional matter, the Court will dispose of it prior to addressing the merits of the parties' opposing positions with respect to the exercise of personal jurisdiction over the nonresident defendant.

### THE PLAINTIFF'S MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447(c)

As both parties to this action recognize, the federal trial court is empowered to remand any matter to the state court from which it was removed "[i]f at anytime before final judgment it appears that the case was removed improvidently and without jurisdiction...." 28 U.S.C. § 1447(c). It is well established that, in determining whether an action is improvidently removed, the Court must consider the timeliness of the removal petition under 28 U.S.C. § 1446(b). *Royal v. State Farm Fire & Casualty Company*, 685 F.2d 124, 127 (5th Cir.1982); *London v. United States Fire Insurance Company*, 531 F.2d 257, 259–269 (5th Cir.1976).

Subsection (b) of 28 U.S.C. § 1446 provides, in its entirety, as follows:

The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or

within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. As already noted, the plaintiff's procedural challenge in this action is that the case was "improvidently" removed from state court, since the removal petition was filed more than 30 days after the defendant's receipt of the summons and complaint. The argument is premised on the belief that the defendant must have received process on some date prior to June 18, 1983.

■ However, by his affidavit of November 3, 1983, the defendant clearly states that, "[o]n June 18, 1983, [he] found in his Post Office Box an envelope bearing a postal date of June 9, 1983, in which envelope [he] found a summons and complaint in [this case]...." *Affidavit* of Leonard Schultz at 1–2 (October 31, 1983). Pursuant to 28 U.S.C. § 1446(b), the defendant was thereafter afforded a period of time up to and including July 18, 1983, in which to file a petition for removal—a petition that was, indeed, timely filed on that date.

There is nothing in the record—including the affidavit of plaintiff's attorney, Ross A. Anderson, testifying to both the manner in which service was effected and the substance of a subsequent phone conversation with the defendant's attorney, and that of former defense counsel Michael C. Hechtman, largely confirming the procedural history of the initial stages of this litigation— to suggest that the defendant received process on any date prior to June 18, 1983. The mere fact that some nine days passed between the time of mailing and the defendant's receipt of the summons and complaint does not support a contrary conclusion. In this context, the Court notes, if only parenthetically, its agreement with the defendant that neither Wis.Stat. § 801.-15(5) (1977) nor Rule 6(e) of the Federal Rules of Civil Procedure establishes a presumptive date of receipt within three days of mailing for purposes of this federal lawsuit.

Because the Court concludes, for the reasons articulated, that the defendant's petition for removal was filed in a timely fashion on July 18, 1983, the plaintiff's motion to remand this matter to the Wisconsin Circuit Court for Milwaukee County, pursuant to 28 U.S.C. § 1447(c), must be denied.

## THE DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE

As the Court's preliminary remarks, *supra* at 1363–1364, suggest, this case joins what the Seventh Circuit has recently described as "a long list of cases that have presented personal jurisdiction, minimum contacts, and due process issues regarding the permissible constitutional reach of state long-arm statutes." *Hall's Specialties, Inc. v. Schupbach*, 758 F.2d 214, 215 (7th Cir.1985). When such issues are raised in the context of a motion to dismiss, the trial court routinely begins its analysis with the language of the relevant long-arm statute itself; the Wisconsin statute, Wis. Stat. § 801.05(5) (1977), provides, in relevant part, as follows:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

**(5) Local Services, goods or contracts.** In any action which:

(a) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or

(b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant; or

(c) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to deliver or receive within

this state or to ship from this state goods, documents of title, or other things of value....

The plaintiff contends—and the defendant apparently concedes—that the particular facts of the present action fall neatly within the three, jurisdictional subsections of Wis.Stat. § 801.05(5) (1977), set forth above. Paralleling the language of subsection (a), it is clear that the defendant contracted to sell a certain chemical formula to the plaintiff for $250,000.00; the plaintiff, in turn, performed its preliminary obligation under that contract by providing the initial $50,000.00 installment payment. Consistent with subsection (b) of the statute, the defendant, pursuant to the terms of the subject contract, agreed to deliver the chemical formula to the plaintiff upon receipt of the initial installment. The only apparent obstacle to invocation of this provision is, as the complaint sets forth, that the plaintiff never actually received that formula. Finally, in conformity with the jurisdictional prerequisites established in subsection (c), it is clear that the contract for the purchase and sale of the chemical formula involved a product of considerable value to the parties; among other things, the plaintiff intended to use it in a process for the manufacture of a construction material, and the defendant was to receive royalties on the gross selling price of the finished product.

■ Based on this preliminary analysis, the Court concludes that the plaintiff has met its initial burden of establishing the Court's personal jurisdiction over the defendant under Wisconsin's long-arm statute, Wis.Stat. § 801.05(5) (1977). In turn, since § 801.05 was drafted as a codification of those minimum contacts sufficient to comport with a nonresident party's right to due process under the Fourteenth Amendment to the United States Constitution, compliance with the statute raises a presumption of compliance with the minimal requirements of due process. *Schmitz v. Hunter Machinery Company,* 89 Wis.2d 388, 403, 279 N.W.2d 172, 179 (1979); *Ste-*

*vens v. White Motor Corporation,* 77 Wis.2d 64, 70, 252 N.W.2d 88, 91 (1977).

■ At the same time, that presumption may be rebutted by analyzing the position of an out-of-state defendant under five, well-established touchstones—namely, the quantity of the party's contacts with the state, the nature and quality of those contacts, the source and. cause of the action, the interest of the state in the lawsuit, and the convenience of the parties in trying the matter in this forum. *Vermont Yogurt Company v. Blanke Baer Fruit and Flavor Company,* 107 Wis.2d 603, 608, 321 N.W.2d 315, 318 (1982); *Lincoln v. Seawright,* 104 Wis.2d 4, 11, 310 N.W.2d 596, 599 (1981). Stated differently, to obtain personal jurisdiction over a nonresident litigant, extraterritorial service of process must satisfy both the requirements of the state long-arm statute and the significant, constitutional constraints of the due process clause. *Brunswick Corporation v. Suzuki Motor Company, Ltd.,* 575 F.Supp. 1412, 1417 (E.D.Wis.1983); *Jadair, Inc. v. Walt Keeler Company, Inc.,* 508 F.Supp. 879, 880–881 (E.D.Wis.1981), *aff'd,* 679 F.2d 131 (7th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 258, 74 L.Ed.2d 201 (1982).

It is undisputed that that clause of the Fourteenth Amendment demands "such contacts of the [defendant] with the state of the forum as make it reasonable, in the context of our federal system of government, to require the [defendant] to defend the particular suit which is brought there.... [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he has certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Company v. State of Washington,* 326 U.S. 310, 317, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958), the United States Supreme Court provided this gloss on the due

process implications of personal jurisdiction over nonresident defendants:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some acts by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*See also Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977) (noting that "the relationship among the defendant, the forum, and the litigation" is "the central concern of the inquiry into personal jurisdiction").

In *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court explored further the significance of the due process clause with respect to the exercise of personal jurisdiction over a nonresident party. In that case, the Court refused to recognize the personal jurisdiction of an Oklahoma tribunal over a New York automobile wholesaler and retailer doing business only in the New York area. Writing for the Court, Justice White described the significant purpose of constitutional limitations on personal jurisdiction this way:

> The concept of minimum contacts ... can be seen to perform two related, but distinguishable functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 291–292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Justice White's observations were perhaps most recently underscored in *United States v. Morton*, — U.S. —, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984), where Justice Stevens, writing for the court, reaffirmed that

> personal jurisdiction protects the individual interest that is implicated when a nonresident defendant is haled into a distant and possibly inconvenient forum [citation omitted]. The strength of this interest in a particular case cannot be ascertained from the "face" of the process; it can be determined only by evaluating a specific aggregation of facts, as well as the possible vagaries of the law of the forum, and then determining if the relationship between the defendant ... and the forum, or possibly the particular controversy, makes it reasonable to expect the defendant to defend the action that has been filed in the forum state.

*United States v. Morton*, — U.S. —, —, 104 S.Ct. 2769, 2773–2774, 81 L.Ed.2d 680, 688 (1984); *see also Insurance Corporation of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) ("The personal jurisdiction requirement recognizes and protects an individual liberty interest").

The Court of Appeals for the Seventh Circuit has itself, in recent years and in several contexts, wrestled with the considerable problems attendant upon application of the "minimum contacts" test to challenges to the exercise of personal jurisdiction. In what has become a seminal case in this area, *Lakeside Bridge & Steel Company v. Mountain State Construction Company, Inc.*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), the court determined that a nonresident's order for goods from a Wisconsin plaintiff, coupled with that party's knowledge that those goods would likely be manufactured in and shipped from Wisconsin, was not sufficient for due process purposes to permit the trial court to exercise personal jurisdiction. In reaching this conclusion, the Seventh Circuit noted, at the outset, that

> Lakeside's cause of action is not one entirely "arising from these [in-state] ef-

fects," in the words of § 50 of the *Restatement* [(Second), *Conflict of Laws* § 50 (1971)]. It arises in part at least from events that occurred in West Virginia and Virginia.

More important from the standpoint of the *Restatement* analysis, in view of the fact that the events in Wisconsin were not "of a sort highly dangerous to persons or things," is the complete absence of "other relationships" between Mountain State and Wisconsin. It is the presence or absence of these other relationships upon which the state's right to "exercise jurisdiction over the defendant is likely to depend at least in part." *Restatement, supra,* § 37, Comment a.

When only the plaintiff has relationships to the forum state and the parties are business corporations engaged in a commercial contract dispute, another important factor comes into play, one which the *Restatement* comment calls "the best interests of the international and interstate systems." This factor is based on the proposition that "[a] state should not improperly impinge upon the interests of other states by trying in its courts a case with which it has no adequate relationship." *Restatement, supra,* § 24, Comment b.

Viewed realistically, the contacts with Wisconsin in this case consist solely of "[t]he unilateral activity of [one] who claim[s] some relationship with a nonresident defendant," and this "cannot satisfy the requirement of contact with the forum State" [citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)].

*Lakeside Bridge & Steel Company v. Mountain State Construction Company,* 597 F.2d 596, 603 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). As explained, *supra* at 1363, the defendant finds principal support for its motion to dismiss in both the analysis and result articulated by the Seventh Circuit in this seminal case.

Just one year later, however, in *Wisconsin Electrical Manufacturing Company, Inc. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir.1980), the Court of Appeals found occasion to distinguish *Lakeside* in an action in which a New York corporation with its sole place of business in New York challenged the trial court's personal jurisdiction in a contract action initiated by a Wisconsin corporation. The circuit court explained its conclusion this way:

> The significant contacts of the out-of-state buyer with the forum state that are present here but absent in *Lakeside* are visits by the buyers' agents to Wisconsin in connection with the business on which the claim is based....
>
> The two visits by agents of the defendant to Wisconsin are enough, in our opinion, to distinguish this case from *Lakeside....* Satisfied here is the requirement that the defendant, not merely the plaintiff, conduct activities in the forum state which in a contract case must relate to the formation or performance of the contract. The visits by Pennant's agents to be the forum state, first during negotiations to determine, by inspecting WEM's facilities there, whether it would be able to perform the contract, and later, while the contract was being performed, to negotiate with WEM about performance, were not merely matters of convenience, ... but rather were significant in the formation of the contract and Pennant's efforts to have it satisfactorily performed [citations omitted].

*Wisconsin Electrical Manufacturing Company, Inc. v. Pennant Products, Inc.,* 619 F.2d 676, 677–678 (7th Cir.1980); *see also Nieman v. Rudolf Wolff & Company, Ltd.,* 619 F.2d 1189 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980) (issued on the same day as *Pennant Products* and holding that a defendant's meeting with the plaintiff in the forum state to solicit business and negotiate the subject contract likewise distinguishes *Lakeside* and authorizes personal jurisdiction). Not surprisingly, the plaintiff maintains, as indicated *supra* at 1363, that the circumstances of the present case are more akin to those presented to the Court of

Appeals in *Pennant Products* than in *Lakeside.*

In just the past several months, the Seventh Circuit has further complicated the already rugged landscape of due process-"minimum contacts" authority with its decisions in *Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193 (7th Cir.1985), and *Hall's Specialties, Inc. v. Schupbach,* 758 F.2d 214 (7th Cir.1985). In the former, Judge Flaum, having chronicled the colorful treatment of the personal jurisdiction issue by the federal appellate courts, concluded that the exercise of jurisdiction over a nonresident defendant who initiated certain contract negotiations with a plaintiff by phone call through its counsel, thereby inducing the plaintiff's partner to travel across the country to discuss further certain commercial prospects, does not offend well-established principles of due process. In so ruling, Judge Flaum found compelling the fact that the nonresident defendant had undertaken considerable efforts to solicit the subject contract, as follows:

> ... By so actively reaching out to solicit the services of a Wisconsin partnership in connection with this contract, we conclude that defendants have purposefully established contacts with Wisconsin that easily satisfy the dictates of constitutional due process.

> Unlike the district court, we do not deem defendants' solicitation efforts as comparable to the defendant's mere act of ordering goods from a foreign corporation in *Lakeside.* In commercial transactions, the actual ordering of goods—like the signing and execution of a contract—is often no more than the final link in a long transactional chain connecting the parties, and thus might not be considered an adequate commercial contact in itself to establish personal jurisdiction [citation omitted]. Nevertheless, when a defendant is responsible for initiating several significant links with the forum plaintiff leading to the transaction at issue, this is sufficient to satisfy the Fourteenth Amendment.

*Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193, 1203 (7th Cir.1985). The Court of Appeals also found relevant, though not dispositive, the plaintiff's performance of the contract in Wisconsin—something clearly contemplated by the parties at the time of contracting—and the considerable inconvenience that might accrue to the plaintiff if it were compelled to pursue the action in another forum.

Finally, in what is surely its most recent bout with this troublesome issue, the Seventh Circuit, in *Hall's Specialties, Inc. v. Schupbach,* 758 F.2d 214, 216 (7th. Cir. 1985), upheld the trial court's dismissal of a complaint for breach of warranty and recission of a sales contract on the basis that personal jurisdiction could not properly be exercised over the nonresident defendant. Invoking the "solicitation" test articulated some three months earlier in *Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193 (7th Cir.1985), Judge Evans concluded that the nonresident defendant

> did not purposely avail himself of the privilege of doing business in Indiana and thus did not invoke the benefits and protections of that forum's laws. To make [defendant] Schupbach susceptible to suit in Indiana we believe he would have had to knowingly solicit (in more than a general way) the sale there. Had he done so, his voluntary action would have been calculated to have an effect in Indiana. In such a situation, due process would not be offended by requiring him to go to Indiana and defend himself if the sale turned sour.

*Hall's Specialties, Inc. v. Schupbach,* 758 F.2d 214, 216–17 (7th Cir.1985). The Court is inclined to sepeculate that, if the parties to the present action were afforded an opportunity for additional briefing, the plaintiff would describe the present case in terms characteristic of the Court of Appeals' opinion in *Madison Consulting Group,* while the defendant and present movant would align itself with the result announced in *Hall's Specialties.* Indeed, if the discussion now completed teaches any lesson at all, it is that this area of the law remains highly unsettled and that the ab-

sence of any clear, intelligible principles presages even more disagreement among federal courts as to the proper import of the due process—"minimum contacts" concept. *See, e.g., Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193, 1205–1210 (7th Cir.1985) (Swygert, J., concurring in the result, but arguing, among other things, that *Lakeside* should be overruled); *Hall's Specialties, Inc. v. Schupbach,* 758 F.2d 214, 216–18 (7th Cir.1985) (Flaum, J., dissenting to "an overly narrow and technical construction of the 'minimum contacts' test").

Despite this apparent disarray in the present state of the law, the Court concludes that the circumstances of the present case are more analogous to the facts in *Lakeside* and its progeny than those of *Pennant Products* and the cases finding sufficient contacts for the proper exercise of personal jurisdiction. By his own testimony, defendant Schultz affirms that he "has never traveled to the State of Wisconsin and has not conducted any activities within the State of Wisconsin in connection with the events or transactions giving rise to this lawsuit." *Affidavit* of Leonard Schultz at 1 (July 20, 1983). The plaintiff, however, finds considerable significance in the fact that one of the defendant's representatives—namely, Marvin Weintraub—traveled to Wisconsin in November of 1980 to meet with its staff; indeed, it is the plaintiff's contention that the actual breach of the parties' contract occurred upon Mr. Weintraub's delivery of the chemical formula in Wisconsin at that time.

Nonetheless, Mr. Weintraub's affidavit makes clear that his appearance in Wisconsin came in the wake of his attendance at a business seminar in Chicago, Illinois, and during the course of his subsequent vacation from his employer, Ford Motor Company. In this context, Mr. Weintraub affirms that he traveled to Wisconsin to meet with the plaintiff's representatives solely "as a matter of convenience" and, significantly, that if he "had not attended [the] work related seminar in Chicago, Illinois, he would not have gone to Milwaukee, Wis-

consin." *Affidavit* of Marvin Weintraub (November 16, 1983). The factual circumstances underlying the Seventh Circuit's opinion in *Wisconsin Electrical Manufacturing Company, Inc. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir.1980), upon which the plaintiff principally relies, are wholly distinguishable: In that case, the court found that the requirements of due process had been sufficiently established by *two* in state appearances by representatives of the nonresident defendant—once to inspect the plaintiff's facilities to determine whether it was capable of performing the contemplated contract and a second time to discuss certain "misunderstandings" that had arisen between the parties. As explained *supra* at 1368, the Court of Appeals specifically held that the defendant's visits were not merely occasioned by convenience but were critical to the execution of the contract and the parties' performance thereunder. This Court declines to so characterize Marvin Weintraub's singular visit to Wisconsin in November of 1980, apparently undertaken for the sole purpose of delivery of the formula. The record persuasively establishes that his appearance was, indeed, merely a matter of convenience and, as such, constituted nothing more than "a foot-fall on the State's soil," an event upon which the *Pennant Products* court would have plainly declined to find jurisdiction. *Wisconsin Electrical Manufacturing Company, Inc. v. Pennant Products, Inc.,* 619 F.2d 676, 678 n. 8 (7th Cir.1980).

The Court also finds significant the defendant's affirmation that he has "never advertised or solicited any investors, or conducted any advertising or solicitation activities, in the State of Wisconsin"; neither does he maintain a telephone listing, post office box, office, employees, representatives, or registered agents within the state. *Affidavit* of Leonard Schultz at 1–2 (July 20, 1983). Although the contract itself, appended to the plaintiff's responsive memorandum as an exhibit, provides little insight into the identity of the soliciting party, the defendant's uncontroverted affi-

davit clearly removes this case from the scope of the "soliciting party" principle articulated in *Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193 (7th Cir.1985), and invoked, although to a different end, in *Hall's Specialties, Inc. v. Schupbach,* 758 F.2d 214, 216 (7th Cir. 1985), *see supra* at 1369–1370.

The most persuasive argument the plaintiff rallies in support of its position is that the contract, by its very terms and conditions, contemplated "a continuing relationship" between the parties as the project developed—a relationship that was purportedly to include the defendant's participation in the development of the formula technology and its concomitant share in the tangible results of the project through receipt of royalties. *See* Plaintiff's *Memorandum in Opposition to Motion to Dismiss* at 10–12 (November 8, 1983). The apparent difficulty with the argument is that it proves too much: The Court would be establishing a curious precedent indeed if it found today that a nonresident party might properly be haled into the court of a foreign jurisdiction merely by *contracting* for the provision of goods and services for an indeterminate period of time into the future. The absurdity of such a result is underscored by the very circumstances of this case, in which the so-called "continuing relationship" did not last beyond the delivery of what the plaintiff now characterizes as a worthless product.

Finally, the Court finds nothing to support the exercise of personal jurisdiction over this defendant in the parties' apparent exchange of correspondence and telephone calls, all purportedly in reference to the performance of the subject contract. Such "contacts" are surely characteristic of most commercial transactions, including but not limited to those attendant upon the execution and performance of business contracts between parties in different states. The Seventh Circuit, in *Lakeside Bridge & Steel Company v. Mountain State Construction Company,* 597 F.2d 596, 604 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), specifically identified the anomalous end to which the plaintiff's argument would lead: The "[u]se of the interstate telephone and mail service to communicate with a Wisconsin plaintiff, if constituting contact supporting jurisdiction, would give jurisdiction to any state into which communications were directed."

For all of these reasons, the Court concludes that the defendant did not, in the language of *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), "purposely avail[] himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Accordingly, the motion to dismiss the complaint for lack of personal jurisdiction must be granted.

## CONCLUSION

For the reasons set forth herein, the Court hereby DENIES the plaintiff's motion to remand this case to the Wisconsin Circuit Court for Milwaukee County, pursuant to 28 U.S.C. § 1447(c).

The Court further GRANTS the defendant's motion to dismiss the complaint in toto for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.